IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAHFCO SELECT, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| - against - ) | **JURY TRIAL DEMANDED** |
| ) | |
| AMB NEW GENERATION DATA ) | |
| EMPOWERMENT LLC, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff RAHFCO Select, L.P. ("RAHFCO") alleges as and for its Complaint against

Defendant AMB New Generation Data Empowerment LLC ("AMB") as follows:

## INTRODUCTION

1.      From April 10, 2008 through September 5, 2008, Plaintiff RAHFCO entered into

four agreements (the "Agreements") with AMB.  Pursuant to the Agreements, RAHFCO loaned

a total of $700,000 to AMB.  Each of the Agreements provided that RAHFCO would loan AMB

money and, in return, AMB would issue promissory notes (the "Notes") in an amount equal to

the money RAHFCO loaned to AMB.  Each of the loans was to be repaid within one year.  In

lieu of paying interest on the amounts borrowed from RAHFCO, AMB agreed to issue to

RAHFCO limited liability company membership interests in AMB (the "Membership Interests").

Between April 10, 2008 and November 10, 2008, RAHFCO made a total of $700,000 in loans

(the "Loans") to AMB.  AMB breached these Agreements by (1) failing to issue any of the Notes

to RAHFCO, (2) failing to repay any of the $700,000 RAHFCO loaned to AMB, and (3)  failing

to issue any of the Membership Interests to RAHFCO. Accordingly, RAHFCO commences this action seeking repayment of the $700,000 loaned to AMB, issuance of the Membership Interests, and such other relief as the Court deems proper.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff RAHFCO is a Delaware limited partnership with its principal place of business at 3229 Nic Ann Court, Sioux Falls, South Dakota.

3.      Defendant AMB is an Illinois limited liability company with its principal place of business at 11 Knight Hill Court, Buffalo Grove, Illinois 60089.

4.      Jurisdiction is proper in this Court because there is complete diversity of citizenship and the amount in controversy exceeds the $75,000 threshold under 28 U.S.C. § 1332.

5.      This Court has both general and specific personal jurisdiction over defendant AMB pursuant to Rule 4 of the Federal Rules of Civil Procedure and 735 ILCS 5/2-209(a) because, among other things, AMB is a corporation organized under the laws of the State of Illinois, has its principal place of business in Illinois, transacts business within Illinois, and entered into and contracted to perform the Agreements in Illinois such that the Agreements are substantially connected with the State of Illinois.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(a) because defendant AMB's principal place of business is in the Northern District of Illinois and a substantial part of the events giving rise to the claims occurred in this district.

[869610-6]

2

## CLAIMS FOR RELIEF

### Count I – Breach of Contract

7.     RAHFCO repeats and realleges the allegations in paragraphs 1 through 6 as though fully set forth herein.

8.     Between April 10, 2008 and September 5, 2008, AMB and RAHFCO entered into the Agreements.  The terms and conditions of the Agreements are nearly identical, varying only in their dates, the amount of money RAHFCO was to loan AMB, the amount of the Note AMB was to issue to RAHFCO, and the number of the Membership Interests AMB was to issue to RAHFCO in lieu of interest.

9.     Each of the Agreements provides that "the principal balance of the Promissory Note shall be due and payable in full one year after the date of issuance."

10.     On or about April 10, 2008, AMB and RAHFCO entered into the first Agreement in the principal amount of $100,000 (the "April Agreement," annexed hereto as Exhibit A).  The April Agreement required RAHFCO to loan AMB  $100,000, and for AMB to issue to RAHFCO a Note in the amount of $100,000 in return, as well as deliver to RAHFCO 14 Membership Interests, representing 1.4% of AMB equity.

11.     On or about May 15, 2008, AMB and RAHFCO entered into the second Agreement in the principal amount of $100,000 (the "First May Agreement," annexed hereto as Exhibit B).  The First May Agreement required RAHFCO to loan AMB  $100,000, and for AMB to issue to RAHFCO a Note in the amount of $100,000 in return, as well as deliver to RAHFCO 14 Membership Interests, representing 1.4% of AMB equity.

12.     On or about May 15, 2008, AMB and RAHFCO entered into the third Agreement in the principal amount of $300,000 (the "Second May Agreement," annexed hereto as Exhibit

C). The Second May Agreement required RAHFCO to loan AMB $300,000, and for AMB to issue to RAHFCO a Note in the amount of $300,000 in return, as well as deliver to RAHFCO 42 Membership Interests, representing 4.2% of AMB equity.

13.     On or about September 10, 2008, AMB and RAHFCO entered into the fourth Agreement in the principal amount of $200,000 (the "September Agreement," annexed hereto as Exhibit D). The September Agreement required RAHFCO to loan AMB $200,000, and for AMB to issue to RAHFCO a Note in the amount of $200,000 in return, as well as deliver to RAHFCO 28 Membership Interests, representing 2.8% of AMB equity.

14.     Pursuant to the Agreements, RAHFCO disbursed the following amounts to AMB: $100,000 on or about April 10, 2008; $50,000 on or about June 2, 2008; $35,000 on or about June 16, 2008; $60,000 on or about June 26, 2008; $155,000 on or about June 30, 2008; $50,000 on or about September 5, 2008; $5,000 on or about September 30, 2008; $100,000 on or about October 16, 2008; $45,000 on or about October 30, 2008; and $100,000 on or about November 10, 2008.

15.     Each of the loans that AMB received was due and payable in full within one year. The last of the payments RAHFCO made to AMB was on November 10, 2008. Thus, by November 10, 2009, AMB was required to repay RAHFCO all of the $700,000 RAHFCO had loaned it.

16.     As of the date of the filing of this Complaint, and in material breach of the terms of the Agreements, AMB has failed to issue to RAHFCO any of the Notes, has failed to issue to RAHFCO any of the Membership Interests, and has failed to repay to RAHFCO any of the $700,000 principal due and owing under the Agreements.

17.     RAHFCO has fully and completely fulfilled all of its obligations under the

Agreements.

18.     As a direct and proximate result of AMB's breach of the Agreements, RAHFCO

has suffered damages and is entitled to an award of an amount to be proved at trial, but in no

event less than $700,000 and the Membership Interests.

**WHEREFORE**, Plaintiff RAHFCO respectfully requests that this Court:

      a.      enter judgment in favor of RAHFCO;

      b.      award RAHFCO $700,000;

      c.      order AMB to issue to RAHFCO Membership Interests representing 9.8%

            of the equity of AMB or pay RAHFCO the value of 9.8% of the equity of

            AMB; and

      d.      award to RAHFCO such other and further relief as the Court deems just

            and proper.

### Count II – Specific Performance

19.     RAHFCO repeats and realleges the allegations of paragraphs 1-18 as though fully

set forth herein.

20.     Pursuant to the Agreements, RAHFCO is entitled to a total of 98 Membership

Interests in AMB (representing a total 9.8% of the equity of AMB) as well as repayment of the

full loan principal of $700,000.

21.     AMB has not delivered to RAHFCO the Membership Interests as promised.

22.     As a result, RAHFCO has been injured and deprived of its 9.8% equity interest in

AMB.

23.     Because the Membership Interests are unique, AMB's breach has left RAHFCO

without an adequate remedy at law.  Therefore, RAHFCO seeks specific performance of AMB's

[869610-6]

obligations to provide the 98 Membership Interests to RAHFCO.

**WHEREFORE**, Plaintiff RAHFCO respectfully requests that this Court:

    a.    enter judgment in favor of RAHFCO;

    b.    order AMB to issue to RAHFCO Membership Interests representing 9.8% of the equity of AMB or pay RAHFCO the value of 9.8% of the equity of AMB; and

    c.    award to RAHFCO such other and further relief as the Court deems just and proper.

### Count III –Unjust Enrichment

24.    RAHFCO repeats and realleges the allegations of paragraphs 1-23 as though fully set forth herein.

25.    RAHFCO loaned $700,000 to AMB in reliance upon AMB's promise to provide promissory notes, to deliver 98 Membership Interests in AMB, and to repay the loan principal of $700,000 within one year.

26.    AMB failed to deliver the Notes and the Membership Interests, despite keeping the $700,000 it received from RAHFCO.

27.    AMB unjustly retained sums equitably due to RAHFCO. Under principles of justice, equity and good conscience, AMB should not be allowed to retain Plaintiff's $700,000.

**WHEREFORE**, Plaintiff RAHFCO respectfully requests that this Court:

    a.    enter judgment in favor of RAHFCO;

    b.    order AMB to turn over to RAHFCO as restitution the $700,000 it unjustly retained and interest thereon; and

    c.    award to RAHFCO such other and further relief as the Court deems just

and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury for all claims so triable as of right.

Dated: January 15, 2010                     Respectfully submitted,

                                            RAHFCO SELECT, L.P.


                                            By: /s/ Celiza P. Bragança
                                            SPERLING & SLATER, P.C.
                                            55 W. Monroe Street, Suite 3200
                                            Chicago, Illinois 60603
                                            (312) 641-3200
                                            (312) 641-6492 (fax)

                                            Ralph A. Siciliano
                                            TANNENBAUM HELPERN
                                            SYRACUSE & HIRSCHTRITT LLP
                                            900 Third Avenue
                                            New York, New York 10022
                                            (212) 508-6700
                                            (212) 371-1084 (fax)
                                            *Attorneys for Plaintiff RAHFCO Select L.P.*

# EXHIBIT A

*ATT.*
*Brian*
*Haskel*

Investor Name: RAHFCO Select

Amount Promissory Notes
it Interest
w Generation Data Empowerment, LLC

to be issued by

## AMB NEW GENERATION DATA EMPOWERMENT, LLC
an Illinois limited liability company

**April 10, 2008**

---

## SUBSCRIPTION DOCUMENTS

---

## GENERAL INFORMATION

The information contained herein is being furnished by the undersigned investor to enable AMB New Generation Data Empowerment, LLC, an Illinois limited liability company (the "Company") to determine whether, under Sections 3(b) and/or 4(2) of the Securities Act of 1933, as amended, (the "Securities Act"), and Regulation D ("Regulation D") promulgated thereunder, the undersigned investor meets the qualification and suitability requirements for an investment in promissory notes of the Company (the "Promissory Notes"). The Promissory Notes shall be issued in denominations of $100,000.00 each (a "Promissory Note Unit"). The principal balance of the Promissory Note shall be due and payable in full, one year after the date of issuance. No interest shall accrue or be paid on the Promissory Notes. In lieu of interest, each Promissory Note Unit shall entitle the holder thereof to receive 14 limited liability company membership interests in the Company (the "Membership Interests"). If the offering is fully subscribed, the Membership Interests would constitute 1.4% of all of the issued and outstanding membership interests in the Company as of the date hereof.

The undersigned investor understands that: (i) the Company will rely upon the information contained herein for making the determination whether the investor meets the qualification and suitability requirements described herein; (ii) neither the Promissory Notes nor the Membership Interests (collectively, the "Offered Securities"), will be registered under the Securities Act in reliance upon the exemption from registration provided by Sections 3(b) and/or 4(2) of the Securities Act and Regulation D; and (iii) the purchase of the Offered Securities will be solely for the account of the undersigned investor and not for the account of any other person or with a view toward resale, assignment, fractionalization or distribution thereof.

The undersigned investor must represent to the Company that he or she has adequate means of providing for current needs and possible personal contingencies and has no need for liquidity of this investment.

Please contact Steven Meister, the Manager of the Company, at (847) 791-7838 (with any questions you may have concerning an investment in the Offered Securities.

## SUBSCRIPTION INSTRUCTIONS

AFTER YOU HAVE HAD AN OPPORTUNITY TO OBTAIN ALL THE INFORMATION YOU REQUIRE CONCERNING THE COMPANY AND THIS OFFERING AND HAVE DECIDED TO SUBSCRIBE FOR AND PURCHASE THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS YOU MUST COMPLETE THE PURCHASER QUESTIONNAIRE AND SUBSCRIPTION AGREEMENT (THE "SUBSCRIPTION DOCUMENTS") AND VERIFY THAT YOU ARE AN "ACCREDITED INVESTOR." PLEASE READ THE FOLLOWING INSTRUCTIONS TO ASCERTAIN HOW TO COMPLETE THE SUBSCRIPTION DOCUMENTS WHICH MUST BE COMPLETED BY EACH SUBSCRIBER:

1.      Natural Persons.

i

- Verify that you are an accredited investor by checking the appropriate box in Section V of the Subscription Agreement.

- Execute the Subscription Documents on the signature line near the top of Page 13.

If the investment is being made by joint or co-tenants then:

- Each joint or co-tenant must complete the Purchaser Questionnaire included herein.

- Each joint or co-tenant must execute the Subscription Documents on the signature line near the top of Page 13.

2. Entities.

- Verify that the entity is an "accredited investor" by checking the appropriate box in Section V of the Subscription Agreement.

- The authorized officer of the entity must execute the Subscription Agreement, print the entity's name above his or her signature and indicate his or her title on the signature line near the top of Page 14 or 15.

- The authorized officer must also complete the applicable entity level certificate contained on Pages 16-20 of the Subscription Agreement and attach a copy of the entity's governing documents.

- The authorized officer of the entity must also attach a copy of the resolutions supporting the relevant certificate.



**AMB NEW GENERATION DATA EMPOWERMENT, LLC**
**PURCHASER QUESTIONNAIRE**
(provide all applicable information)

(Please print or type)  <u>TO BE COMPLETED BY ALL SUBSCRIBERS</u>

Principal Amount of Promissory Notes: ___*100,000*___

<u>Purchaser Information:</u>

Name of Individual or Entity: ___*RAHFCO Select*___

Federal Tax ID or Social Security Number: _____

Marital Status (Natural Persons): _____ Date of Birth: _____

Citizen of or State of Organization: _____

Principal Address: ___*3229 nic Ann Court*___
                                              (street)
___*Sioux Falls*___    ___*SD*___    ___*57103*___
        (city)                 (state)              (zip)

Telephone Number: ___*605-450-6334*___

Mailing Address: _____
(if different)                          (street)

_____
        (city)                 (state)              (zip)

<u>Co-Purchaser Information:</u>

Name of Individual or Entity: _____

Federal Tax ID or Social Security Number: _____

Marital Status (Natural Persons): _____ Date of Birth: _____

Citizen of or State of Organization: _____

Principal Address: _____
                                              (street)

_____
        (city)                 (state)              (zip)

1

Telephone Number: _____

Mailing Address: _____
(if different)                           (street)

_____

     (city)                    (state)                    (zip)

Indicate Type of Ownership:

_____ Individual                           _____ Keogh Plan

_____ Tenants by the Entireties*           _____ Trust

_____ Joint tenants with Rights of         ✓ Partnership
       Survivorship*

_____ Community Property*                  _____ Limited Liability Company

_____ Tenants in Common*                   _____ Corporation

_____ Individual Retirement Account (IRA)*  _____ Uniform Gift to Minors Act
       (signature of Custodian also required)        State:
                                                             Custodian's Name:
_____ Pension Plan                         Minor's Name:

*Two or more signatures required

2

## AMB NEW GENERATION DATA EMPOWERMENT, LLC

### SUBSCRIPTION AGREEMENT

AMB New Generation Data Empowerment, LLC
Attention: Steven Meister
11 Knight Hill Court
Buffalo Grove, Illinois 60089

### I. SUBSCRIPTION

Subject to the terms and conditions contained herein, the undersigned hereby offers and agrees to purchase the principal amount of promissory notes (the "Promissory Note"), shown on the signature page hereof to be issued by AMB New Generation Data Empowerment, LLC (the "Company"), without interest. The Promissory Note shall be issued in the amount of $100,000.00 (a "Promissory Note Unit"). The principal balance of the Promissory Note shall be due and payable in full one year after the date of issuance. No interest shall accrue or be paid on the Promissory Note. In lieu of interest, the Promissory Note Unit shall entitle the holder thereof to receive 14 limited liability company membership interests in the Company (the "Membership Interests"). If this offering is fully subscribed, the Membership Interests would constitute 1.4% of the issued and outstanding membership interests in the Company as of the date hereof. The Promissory Note and the Membership Interests are hereinafter collectively referred as the "Offered Securities." The offer of the Offered Securities is hereinafter referred to as the "Offering." The undersigned has submitted a check/money order or has wired the necessary monies to "AMB New Generation Data Empowerment, LLC." In the case of wire transfers, the undersigned has provided evidence to enable the Company to verify receipt.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED, SOME OF WHICH ARE DESCRIBED IN THE SECTION HEADED "SPECIAL INFORMATION REGARDING INVESTMENT CONSIDERATIONS." THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT OR OF ANY OTHER INFORMATION PROVIDED TO SUBSCRIBERS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFER AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT IN COMPLIANCE WITH THE SECURITIES ACT OF 1933, AS AMENDED, AND APPLICABLE STATE SECURITIES LAWS, OR EXEMPTIONS THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## II.    TERMS OF THE OFFERING: DESCRIPTION OF THE BUSINESS

The Company is a newly formed Illinois limited liability company which was formed in connection with the contribution by AMB Dataminers, Inc., an Illinois corporation ("AMB") of substantially all of its assets and properties to the Company in exchange for Company Membership Interests. The Company is offering up to $100,000.00 in principal amount of Promissory Notes. Each $100,000 Promissory Note Unit shall entitle the subscriber to receive 14 limited liability company membership interests in the Company. It is anticipated that the entire offering shall be purchased by a single investor. The Company reserves the right to reject any subscription, in whole or in part, for any reason in its sole discretion.

## III.    OFFERING AND SALE OF NOTES

The offering price of the Promissory Notes has been determined unilaterally by the Company and is not the result of arm's-length negotiations. The offering of the Promissory Notes (the "Offering") is being made on a best-efforts basis, $100,000.00 maximum (the "Maximum Offering Amount"). The Promissory Notes will be issued upon acceptance of a subscription by the Company. The Company will continue the Offering until the earliest to occur of (i) June 30, 2008, (ii) sale of the Maximum Offering Amount or (iii) such other date as the Company may determine, in its sole discretion. The Company may reject any subscription, in whole or in part, in its sole and absolute discretion.

## IV.    OFFERING MATERIALS

The undersigned hereby acknowledges receipt of the following offering materials for the Promissory Notes:

1.    Company Business Plan dated March 10, 2008;

2.    Form Promissory Note;

3.    Operating Agreement;

4.    Subscription Agreement; and

5.    Purchaser Questionnaire.

In addition, the undersigned acknowledges having been presented with an opportunity to review copies of any additional information concerning the Company, which the Company has in its possession. All of the above referenced materials are collectively referred to as the "Offering Documents."

## V.    ACCREDITATION

The undersigned understands that the Offered Securities are not being registered under the Securities Act of 1933, as amended (the "Securities Act"), or the securities acts of any state (the "Laws") and are being offered and sold in reliance upon exemptions from registration under the Securities Act and the Laws. To enable the Company to offer and sell the Offered Securities

2

in reliance on these exemptions, each investor must be an "accredited investor" and further represents that he or she has a net worth (including home, home furnishings and automobiles) of at least $1,000,000. The undersigned has initialed as many of (a) through (g) below which are applicable.

An "Accredited Investor" means any person who comes within any of the following categories, or who the Company reasonably believes comes within any of the following categories, at the time of sale of Offered Securities to that person:

[  ]  a.   A natural person whose individual net worth, or joint net worth with the undersigned's spouse, at the time of purchase, exceeds $1,000,000 (net worth, for purposes of the Offering, unless otherwise noted includes home, home furnishings and automobiles. For Illinois investors, such net worth may not include home, home furnishings and automobiles).

[  ]  b.   A natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years, and has a reasonable expectation of reaching the same income level in the current year.

[✓]  c.   Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership not formed for the specific purpose of acquiring the Promissory Notes offered with assets in excess of $5,000,000.

[  ]  d.   Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors.

[  ]  e.   Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940.

[  ]  f.   Any director or executive officer of the Company.

[  ]  g.   Any entity in which all of the equity owners are accredited investors.

**PLEASE INITIAL THE STATEMENT(S) ABOVE WHICH ARE TRUE AS TO YOU OR THE ENTITY IN THE BRACKETS TO THE LEFT THEREOF.  ONE**

3



OR MORE STATEMENTS MUST BE INITIALED BY THOSE WISHING TO INVEST. IF NO INITIALS ARE PROVIDED BELOW, THIS DOCUMENT CANNOT BE ACCEPTED FOR SUBSCRIPTION. IF THE PROMISSORY NOTES ARE BEING PURCHASED ON BEHALF OF AN INDIVIDUAL RETIREMENT ACCOUNT ("IRA"), KEOGH PLAN OR SIMILAR FIDUCIARY ACCOUNT, THE REPRESENTATIONS BELOW SHOULD BE MADE ON BEHALF OF THE BENEFICIARY OR DONOR WHO DIRECTLY OR INDIRECTLY SUPPLIES THE FUNDS FOR INVESTMENT.

## VI. REPRESENTATIONS AND WARRANTIES

The undersigned hereby represents, warrants and understands that:

(1)    if any of the information contained in the Subscription Documents is or becomes incorrect with respect to the undersigned, the undersigned will promptly notify the Company;

(2)    the undersigned is an "accredited investor" as defined in Section V above and has a net worth of at least $1,000,000;

(3)    the Offered Securities subscribed for herein will be purchased solely by and for the account of the undersigned for investment, and are not being purchased for subdivision, fractionalization, resale or distribution; the undersigned has no contract, undertaking, agreement or arrangement with any person to sell, transfer or pledge all or any part of the Offered Securities for which the undersigned hereby subscribes, and the undersigned has no plan or intent to enter into any such contract, undertaking or arrangement;

(4)    the Company will have no obligation to recognize the ownership, beneficial or otherwise, of the Offered Securities by anyone but the undersigned;

(5)    the Offered Securities have not and will not be registered under the Securities Act or the securities laws of any state (the "Laws"), and must be held indefinitely unless they are subsequently registered under the Securities Act and the Laws, or exemptions from such registration are available and the undersigned may not transfer the Offered Securities, or any interest therein, unless and until the Company shall have consented thereto (which consent may be withheld in the absolute discretion of management of the Company), provided further that the undersigned shall provide, if the Company so requires, an opinion of counsel satisfactory to the Company, that the intended disposition will not violate the Securities Act or the Laws or the rules and regulations of the Securities and Exchange Commission or of any state securities commission promulgated thereunder;

(6)    the Company does not have any obligation or intention to register the Offered Securities under any federal or state securities act or law, or to file the reports to make public the information required by Rule 144 under the Securities Act;

4

(7)    the undersigned must generally hold the Offered Securities for a minimum period of one year and may not sell, transfer, pledge or otherwise dispose of the Offered Securities except in compliance with the Securities Act and the Laws or exemptions therefrom;

(8)    the undersigned alone or with his or her Purchaser Representative (if applicable), has knowledge and experience in financial and business matters, in general and in investments in corporations in particular;

(9)    the undersigned has participated in other privately placed investments and/or he or she has the capacity to protect his or her own interest in investments like the subject investment and that he or she is capable of evaluating the merits, risks and other facets of the subject investment;

(10)    the undersigned's financial condition is such that he or she has no need for liquidity with respect to an investment in the Offered Securities;

(11)    the undersigned is able to bear the economic risk of the investment in the Offered Securities for an indefinite period of time, including the risk of losing all of his or her investment, and the loss of his or her entire investment in the Offered Securities would not materially adversely affect the standard of living of the undersigned and his or her family;

(12)    the undersigned has either secured independent tax advice with respect to an investment in the Offered Securities, upon which he or she, alone or with his or her Purchaser Representative (if applicable), is relying, or he or she is sufficiently familiar with the income taxation of corporations that he or she deemed such independent advice to be unnecessary;

(13)    the undersigned, either alone or with the assistance of his or her purchaser representative (as that term is defined under Rule 501(h) of Regulation D), if any, has had an opportunity to ask questions of and receive answers from duly designated representatives of the Company concerning the terms and conditions of the Offering and the Company generally and has been afforded an opportunity to examine those documents and other information which the undersigned or his or her representative, if any, has requested for the purpose of evaluating an investment in the Offered Securities and for the purpose of answering any questions the undersigned or his or her representative, if any, may have concerning the business and affairs of the Company;

(14)    in evaluating the suitability of an investment by the undersigned in the Company, the undersigned has relied solely upon the materials made available to the undersigned at the undersigned's request and independent investigations made by the undersigned in making the decision to purchase the Promissory Notes subscribed for herein, and acknowledges that no representations or warranties (oral or written), have been made to the undersigned with respect thereto;

5



(15) the undersigned was not induced to invest by any form of general solicitation or general advertising including, but not limited to: (a) any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over the television or radio; (b) any seminar or meeting whose attendees had been invited by any general solicitation or general advertising;

(16) the undersigned is aware of the fact that (a) the Company is a development stage company with a limited operating history and (b) investment in the Offered Securities is very speculative and involves a high degree of risk of loss of the entire investment;

(17) no federal or state agency has reviewed or passed upon the adequacy of the offering, made any finding or determination as to the fairness for investment, or any recommendation or endorsement of the Offered Securities as an investment;

(18) all information provided by the undersigned is true and accurate as of the date set forth on the subscription page hereof, and if there should be any change in such information prior to the acceptance of his or her subscription for the Promissory Notes that he or she is purchasing, the undersigned will immediately provide such information to the Company.

## VII. INDEMNIFICATION

The undersigned hereby agrees to indemnify each of the Company and its members, managers, officers, employees and agents and to hold each of them harmless against any and all loss, damage, liability or expense, including reasonable attorneys' fees, which they or any of them may suffer, sustain or incur by reason of or in connection with any misrepresentation or breach of warranty or agreement made by the undersigned.

## VIII. ACCEPTANCE AND REVOCATION

The undersigned understands and agrees that this subscription may be accepted or rejected by the Company, in whole or in part, in its sole and absolute discretion, and if accepted, the Promissory Notes purchased pursuant hereto will be issued only in the name of the undersigned. The undersigned hereby acknowledges and agrees that the undersigned may not cancel, revoke or withdraw this Subscription Agreement, and that this Subscription Agreement and the documents submitted herewith shall survive (a) changes in the transactions, documents and instruments provided to or explained to the undersigned that are not material and (b) the death or disability of the undersigned.

## IX. INFORMATION REGARDING INVESTMENT CONSIDERATIONS

In addition to the other factors that may impact upon an investment in the Company, investors should consider the following important information. THIS INFORMATION DOES NOT CONSTITUTE A COMPLETE DESCRIPTION OF ALL OF THE FACTORS THAT MAY IMPACT AN INVESTMENT IN THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS. INVESTORS ARE URGED TO CONDUCT THEIR OWN INVESTIGATION AND TO REQUEST WHATEVER

6



INFORMATION THEY DEEM NECESSARY FROM THE COMPANY TO EVALUATE AN INVESTMENT IN THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS.

Limited Operating History of the Company; Increased Development Costs

The Company is a newly formed limited liability company, but AMB Dataminers, Inc. has over 10 years of operational and development experience. The Company will be entirely dependent upon the efforts of its key personnel. The Company is at a stage of its development where it anticipates that increased efforts will be required to develop its customer base. Accordingly, operations of the Company are subject to the many risks inherent in expanding a business enterprise, including unanticipated expenses. There is no assurance that the Company will be able to operate on a profitable basis.

Illiquidity of Investment

There is no public market for the Offered Securities and none is expected to develop. The Offered Securities will be subject to restrictions on transfer.

The Promissory Notes are Unsecured

The Promissory Notes are unsecured obligations of the Company. The Company may issue other notes which either are secured or are entitled to a priority in payment over the Promissory Notes.

Dependence on Key Personnel

The Company's success depends in significant part upon the continued services of its key technical, sales and senior management personnel. Should any of them depart, operations could be adversely affected. The Company's success depends on the Company's ability to attract and retain highly trained technical, sales and management personnel. The Company will need to continue to hire additional personnel as its business grows. There are shortages of such personnel in the current labor market. Shortages of qualified personnel could limit the ability of the Company to increase sales of existing products or services or to launch new products or services.

Risks Associated with Planned Expansion

The Company's business plan calls for the building of a customer base through Resellers, Trade Shows, OEM Partners, Consulting Company Partners and Webinars/email marketing. No assurances can be given that this customer base will develop. In addition, the Company's ability to attract customers is dependent on its success in attracting and retaining competent sales personnel and on its ability to establish partnerships. The implementation of the Company's marketing plans will increase payroll and other operating costs of the Company. No assurances can be given that the Company will be able to assimilate the growth required to implement its expanded marketing plan, either from a cost or an operational standpoint.

7



Development Timing

The Company has aggressive timetables for the marketing of its products. Meeting of its timetables is a function of continued, uninterrupted funding, as well as the ability to meet scheduled technological developments on a timely basis. Failure to meet any phase of a timetable will have the effect of delaying subsequent phase developments as well and could have a material adverse effect upon the Company's business, results of operations and financial condition. There can be no assurances that the Company will be able to meet its scheduled timetables, if at all.

Competition

The market served by the Company is highly competitive and there are few substantial barriers to entry. Competition among companies that provide similar services is intense and is expected to increase significantly in the future. AMB's current perceived competition would be IBM, Oracle, SAS (DataFlux), Trillium and Informatica.

These companies may have greater name recognition and more established relationships within the industry than the Company. Such competitors may be able to undertake more extensive marketing campaigns, obtain more attractive servicing models, adopt more aggressive pricing policies and devote substantially more resources to competing in the Company's industry.

Because the operations and strategic plans of existing and future competitors are undergoing rapid change, it is difficult for the Company to anticipate which companies are likely to offer competitive services in the future. There can be no assurance that the Company will be able to compete successfully against current or future competitors.

Uncertain Acceptance of the Company's Products and Services

The Company's ability to establish and maintain a leadership position in providing its products will depend on, among other things: (i) the Company's success in forging partnerships with third-party equipment vendors; (ii) the Company's ability to target and qualify prospects for installation; (iii) the Company's marketing and sales efforts; (iv) the Company's ability to provide customer support and service; and (v) the Company's ability to develop and maintain brand recognition for its providers. The Company operates in a market that is in an early stage of development, is rapidly evolving and is characterized by an increasing number of market entrants who have introduced or developed competing services. As is typical in the case of a new and rapidly evolving industry, demand and market acceptance for recently introduced products and services are subject to a high level of uncertainty and risk. Sales of the Company's products may require an extended sales effort in certain cases. Because the market for the Company's services is new and evolving, it is difficult to predict the size of this market and its growth rate, if any. If the market fails to develop, develops more slowly than expected or becomes saturated with competitors, the Company's business, results of operations and financial condition could be materially adversely affected.

8



**The Company may be unable to attract or retain clients**

The Company's long-term success depends on its ability to deploy its products to End-Users, Software Vendors and Consulting/Services Companies. The Company continues to develop its products and intends to invest significant resources in marketing this product. The Company cannot be certain that its marketing efforts will generate additional clients. Competition from the Company's competitors is likely to increase, and may cause some of its clients to switch to its competitors' products and services.

**The Company's Operating Results may Fluctuate**

The Company's operating results may fluctuate significantly in the future as a result of a variety of factors, many of which are outside the Company's control. Factors that may affect the Company's operating results include: (i) the amount and timing of capital expenditures and other costs relating to the expansion of the Company's operations; (ii) price competition or pricing changes in licensing of competitive products by other software providers; (iii) technical difficulties with respect to the Company's products; (iv) the introduction of new products or services by the Company or its competitors; and (v) general economic conditions and economic conditions specific to the Data Quality/Management industry. Any one of these factors could cause the Company's revenues and operating results to vary significantly in the future. In addition, as a strategic response to changes in the competitive environment, the Company may from time to time make certain pricing, service or marketing decisions or acquisitions that could cause significant declines in the Company's operating results.

**The Company must adapt to technology trends and evolving industry standards**

The market for Data Profiling/Quality/Management systems is characterized by rapid technological developments, frequent new product introductions and evolving industry standards. The emerging character of these products and services and their rapid evolution will require the Company to effectively use leading technologies, continue to develop its technological expertise, enhance its current services and continue to improve the performance, features and reliability of its products. There can be no assurance that the Company will be successful in responding quickly, cost effectively and sufficiently to these or other such developments. In addition, the widespread adoption of new technologies or standards could require substantial expenditures by the Company to modify or adapt its services. A failure by the Company to rapidly respond to technological developments could have a material adverse effect on the Company's business, results of operations and financial condition.

**There is no Public Market and the Offered Securities are not Marketable or Transferable**

There is no public market for any of the Company's securities, including the Promissory Notes and the Membership Interests, and no such market is expected to develop in the foreseeable future. The Membership Interests are subject to restrictions on transfer and may not be transferred or resold except as permitted under the Securities Act and applicable state securities laws, pursuant to registration or qualification or exemption therefrom. Consequently, investors' ability to liquidate their investment in the Company on a timely basis is severely limited. Investors should be prepared to hold the Offered Securities indefinitely. The Company

9



gives no assurance that it will ever conduct an initial public offering or that a market for any of its securities will develop or be sustained in the future.

### The Company may issue Additional Securities in the Future

If the Company in the future raises additional funds through the issuance of equity securities, such equity securities may have rights, preferences or privileges senior to those of the Company's Membership Interests. The issuance of additional equity securities may dilute the holder's ownership interest in the Company and subject the holder to the rights, preferences or privileges of the new equity securities, which could be senior to those of the existing Membership Interests.

### Management's Ability to Direct Use of Proceeds

The Company intends to use the net proceeds of this Offering for several purposes, including for general corporate purposes. Accordingly, management of the Company will have substantial discretion in applying the net proceeds to be received by the Company. There can be no assurance that the Company will utilize the net proceeds in a manner that enhances member value. The proceeds of this Offering are not subject to any escrow or minimum proceeds requirement and may be used by the Company immediately upon receipt.

### The Company's future growth will require significant amounts of additional capital and failure to obtain additional capital could significantly impair its ability to implement its business strategy

The expansion and development of the Company's business and the marketing of its products will require significant amounts of additional capital to fund debt service and cash flow deficits. Although management anticipates that the Company's existing funds and the net proceeds of this offering will fund the commencement of its marketing and product development efforts, the Company will need additional capital. The Company may require additional financing or require financing sooner than anticipated if its development plans change or prove to be inaccurate. If the Company is unable to raise additional funds when needed, it will be required to significantly scale back its operations. There can be no assurance that additional capital will be available on acceptable terms, or at all. Any additional debt that the Company incurs during the next few years to finance its expansion could require the Company to dedicate a substantial portion of its future cash flow from operations to the repayment of that debt, thereby reducing the funds available for other business purposes, limiting the Company's ability to obtain additional financing and placing the Company at a competitive disadvantage compared to competitors who have less debt than the Company. This could have an adverse effect on the Company's business, operating results and financial condition.

The Company relies on a combination of licenses, confidentiality agreements and other contracts to establish and protect its intellectual property rights. The steps it has taken may be inadequate to protect its technology or other intellectual property. Third parties may assert infringement claims against the Company and, in the event of an unfavorable ruling on any claim, the Company may be unable to obtain a license or similar agreement to use intellectual property that it relies upon to conduct its business. In addition, these claims may divert management's attention away from the business and be costly to defend.



The Company relies on unpatented trade secrets and know-how to maintain its competitive positions, which it seeks to protect, in part, by confidentiality agreements with employees, consultants and others. However, these agreements may be breached or terminated, and the Company may not have adequate remedies for any breach. In addition, the Company's competitors may otherwise learn or discover its trade secrets. The Company currently has no patents or patent applications pending.

Private Offering; Lack of Agency Review

Since the Offering is a non-public offering, and, as such, is not registered under federal or state securities laws, prospective investors will not have the benefit of review by the Securities and Exchange Commission or any state securities commission.

Indemnification of Officers and Directors

The Company intends to indemnify its managers and members to the fullest extent permissible under the law. Under most circumstances, the Company's managers and members may not be held liable to the Company or its members for errors in judgment or other acts or omissions in the conduct of the Company's business unless such errors in judgment, acts or omissions constitute fraud, gross negligence or malfeasance.

**X.    WIRE TRANSFER INSTRUCTIONS**

The following are the wire transfer instructions of [ _____ ] for the Company's Account:

> [Name]
> [Address]
> [ABA Number]
> [Account No.]

**XI.    MISCELLANEOUS**

The undersigned hereby intends that the undersigned's signature hereon shall constitute a subscription to the Company for the Promissory Note specified on the signature page of this Subscription Agreement.

This Subscription Agreement, and the representations, warranties and agreements contained herein shall be binding upon the heirs, executors, administrators and other successors of the undersigned. If there is more than one signatory hereto, the representations, warranties and agreements of the undersigned are made jointly and severally. This Subscription Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

The undersigned understands that this Subscription Agreement is not binding upon the Company until accepted in writing by an authorized representative of the Company. The undersigned also understands that the subscription funds will not otherwise be returned to the undersigned if this subscription is accepted.

11



The undersigned agrees not to transfer or assign this Agreement, or any of the undersigned's interest herein.

The Subscription Documents constitute the entire agreement among the parties hereto with respect to the subject matter hereof and may be amended only by a written execution of all parties.

12



**AMB NEW GENERATION DATA EMPOWERMENT, LLC
SUBSCRIPTION AGREEMENT COUNTERPART SIGNATURE PAGE FOR
CORPORATE/PARTNERSHIP/LIMITED LIABILITY COMPANY/TRUST
INVESTORS OR OTHER INSTITUTIONAL INVESTORS**

The undersigned hereby subscribes for the principal amounts of Promissory Notes set forth below, and agrees to be bound by the terms of the Subscription Agreement and the Purchaser Questionnaire of which this Agreement is a part.

PLEASE NOTE THAT ONE OR MORE BRACKETS ON PAGES 3 AND 4 MUST BE INITIALED IN ORDER FOR THIS SUBSCRIPTION TO BE CONSIDERED. THE SUBSCRIBER MUST INITIAL ONE OR MORE OF (c), (d), (e) or (g) TO QUALIFY AS AN ACCREDITED INVESTOR.

EXECUTED this _10th_ day of _April_ 2008, at _Gold Canyon, AZ_ .

Principal amount of Promissory Note: $ _100,000.00_

**Entity Name: (please print or type)**

_RAHFCO Select_

By: _Randy Hansen_

Its: _____

---

**ACCEPTANCE**

Accepted this _10th_ day of _April_ , 2008 at Chicago, Illinois.

**AMB NEW GENERATION DATA
EMPOWERMENT, LLC,
an Illinois limited liability company**

By: _____
Title: _President_

14

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTEREST ARE TO BE HELD IN LIMITED PARTNERSHIP NAME]

LIMITED PARTNERSHIP CERTIFICATE

CERTIFICATE OF _RAHFCO Select_ (the "Partnership")
(Name of Partnership)

The undersigned, constituting all requisite signatories of the Partnership, a(n) _Delaware_ (state) limited partnership, hereby certify as follows:

1. That the Partnership commenced business on _8/7_, _2008_ and was established pursuant to a partnership agreement dated _8/7_, _2008_ (the "Agreement").

2. That a true and correct copy of the Agreement is attached hereto and that, as of the date hereof, the Agreement has not been amended (except as to any attached amendments) or revoked and is still in full force and effect.

3. That the requisite partners of the Partnership have determined that an investment in Promissory Notes and Membership Interests issued by AMB NEW GENERATION DATA EMPOWERMENT, LLC to the extent and of the type set forth in that certain Subscription Agreement is of benefit to the Partnership and has determined to make such investment on behalf of the Partnership and has full power and authority to do so and thereby bind the Partnership.

IN WITNESS WHEREOF, we have executed this certificate as the requisite partners of the Partnership this _10th_ day of _April_, 2008, and declare that it is truthful and correct.

_RAHFCO Select_
Limited Partnership

By: _Randy Hansen_
Its: General Partner

18

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTEREST ARE TO BE HELD IN GENERAL PARTNERSHIP NAME]

## GENERAL PARTNERSHIP CERTIFICATE

CERTIFICATE OF _____ (the "Partnership")

(Name of Partnership)

The undersigned, constituting all requisite signatories of the Partnership, a(n) _____ (state) general partnership, hereby certify as follows:

1.  That the Partnership commenced business on _____, _____ and was established pursuant to a partnership agreement dated _____, _____ (the "Agreement").

2.  That a true and correct copy of the Agreement is attached hereto and that, as of the date hereof, the Agreement has not been amended (except as to any attached amendments) or revoked and is still in full force and effect.

3.  That the requisite partners of the Partnership have determined that an investment in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription Agreement is of benefit to the Partnership and has determined to make such investment on behalf of the Partnership and has full power and authority to do so and thereby bind the Partnership.

IN WITNESS WHEREOF, we have executed this certificate as the requisite partners of the Partnership this _____ day of _____, 2008, and declare that it is truthful and correct.

By: _____

Partner

By: _____

Partner

By: _____

Partner

17

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP
INTERESTS ARE TO BE HELD IN CORPORATE NAME]

## LIMITED LIABILITY COMPANY CERTIFICATE

CERTIFICATE OF _____

(Name of Limited Liability Company)

The undersigned, constituting all requisite signatories of _____
a(n) _____ (state) limited liability company (the "Company"), hereby certifies as
follows:

1.    That the Company commenced business on _____, ____ and was
established pursuant to an operating agreement dated _____, ____ (the
"Agreement").

2.    That a true and correct copy of the Agreement is attached hereto and that, as of
the date hereof, the Agreement has not been amended (except as to any attached amendments) or
revoked and is still in full force and effect.

3.    That the requisite partners of the Company have determined that an investment in
Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA
EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription
Agreement is of benefit to the Company and has determined to make such investment on behalf
of the Company and has full power and authority to do so and thereby bind the Company.

IN WITNESS WHEREOF, we have executed this certificate as the requisite members of
the Company this ____ day of _____, 2008, and declare that it is truthful and correct.

By: _____
                Member

By: _____
                Member

By: _____
                Member

19

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTERESTS ARE TO BE HELD IN NAME OF TRUST]

## TRUST CERTIFICATE

CERTIFICATE OF _____

(Name of Trust)

The undersigned, constituting all requisite signatories of that certain Trust Agreement (hereinafter referred to as the "Agreement") of _____ (the "Trust"), hereby certify as follows:

1. That the Trust was established pursuant to the Agreement dated _____.

2. That a true and correct copy of the Agreement is attached hereto and that, as of the date hereof, the Agreement has not been amended (except as to any attached amendments) or revoked and is still in full force and effect.

3. That the requisite trustees of the Trust have determined that an investment in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription Agreement is of benefit to the Trust and has determined to make such investment on behalf of the Trust and has full power and authority to do so and thereby bind the Trust.

IN WITNESS WHEREOF, we have executed this certificate as the requisite Trustee(s) of the Trust this ____ day of _____, 2008, and declare that it is truthful and correct.

By: _____
         Trustee

By: _____
         Trustee

By: _____
         Trustee

1080760_1

20

## SCHEDULE "A"

### LIST OF CLASS A SHAREHOLDERS AND RELATED PRINCIPALS

**To be Completed upon Closing of Offering.**

2019999.5

# EXHIBIT B

Investor Name: RAHFCO Se

$100,000.00 Principal Amount Promissory Notes
without Interest
and Membership Interests in AMB New Generation Data Empowerment, LLC

to be issued by

## AMB NEW GENERATION DATA EMPOWERMENT, LLC
an Illinois limited liability company

May 1, 2008

## SUBSCRIPTION DOCUMENTS

## GENERAL INFORMATION

The information contained herein is being furnished by the undersigned investo enable AMB New Generation Data Empowerment, LLC, an Illinois limited liability comp (the "Company") to determine whether, under Sections 3(b) and/or 4(2) of the Securities Ac 1933, as amended, (the "Securities Act"), and Regulation D ("Regulation D") promulga thereunder, the undersigned investor meets the qualification and suitability requirements fo investment in promissory notes of the Company (the "Promissory Notes"). The Promiss Notes shall be issued in denominations of $100,000.00 each (a "Promissory Note Unit"). principal balance of the Promissory Note shall be due and payable in full, one year after the c of issuance. No interest shall accrue or be paid on the Promissory Notes. In lieu of interest, e Promissory Note Unit shall entitle the holder thereof to receive 14 limited liability comp membership interests in the Company (the "Membership Interests"). If the offering is fi subscribed, the Membership Interests would constitute 1.4% of all of the issued and outstand membership interests in the Company as of the date hereof.

The undersigned investor understands that: (i) the Company will rely upon information contained herein for making the determination whether the investor meets qualification and suitability requirements described herein; (ii) neither the Promissory Notes the Membership Interests (collectively, the "Offered Securities"), will be registered under Securities Act in reliance upon the exemption from registration provided by Sections 3(b) and 4(2) of the Securities Act and Regulation D; and (iii) the purchase of the Offered Securities v be solely for the account of the undersigned investor and not for the account of any other pers or with a view toward resale, assignment, fractionalization or distribution thereof.

The undersigned investor must represent to the Company that he or she has adequ means of providing for current needs and possible personal contingencies and has no need l liquidity of this investment.

Please contact Steven Meister, the Manager of the Company, at (847) 791-7838 (with a questions you may have concerning an investment in the Offered Securities.

## SUBSCRIPTION INSTRUCTIONS

AFTER YOU HAVE HAD AN OPPORTUNITY TO OBTAIN ALL TH INFORMATION YOU REQUIRE CONCERNING THE COMPANY AND THIS OFFERIN AND HAVE DECIDED TO SUBSCRIBE FOR AND PURCHASE THE PROMISSOR NOTES AND THE MEMBERSHIP INTERESTS YOU MUST COMPLETE TH PURCHASER QUESTIONNAIRE AND SUBSCRIPTION AGREEMENT (TH "SUBSCRIPTION DOCUMENTS") AND VERIFY THAT YOU ARE AN "ACCREDITE INVESTOR." PLEASE READ THE FOLLOWING INSTRUCTIONS TO ASCERTAIN HO\ TO COMPLETE THE SUBSCRIPTION DOCUMENTS WHICH MUST BE COMPLETED B EACH SUBSCRIBER:

1.      Natural Persons.

- Verify that you are an accredited investor by checking the appropriate box Section V of the Subscription Agreement.

- Execute the Subscription Documents on the signature line near the top of Page

If the investment is being made by joint or co-tenants then:

- Each joint or co-tenant must complete the Purchaser Questionnaire inclu herein.

- Each joint or co-tenant must execute the Subscription Documents on the signat line near the top of Page 13.

2.  Entities.

- Verify that the entity is an "accredited investor" by checking the appropriate b in Section V of the Subscription Agreement.

- The authorized officer of the entity must execute the Subscription Agreeme print the entity's name above his or her signature and indicate his or her title the signature line near the top of Page 14 or 15.

- The authorized officer must also complete the applicable entity level certifica contained on Pages 16-20 of the Subscription Agreement and attach a copy of t entity's governing documents.

- The authorized officer of the entity must also attach a copy of the resolutio supporting the relevant certificate.

AMB NEW GENERATION DATA EMPOWERMENT, LLC
PURCHASER QUESTIONNAIRE
(provide all applicable information)

TO BE COMPLETED BY ALL SUBSCRIBERS

(Please print or type)

Principal Amount of Promissory Notes: _____

Purchaser Information:

Name of Individual or Entity: _____

Federal Tax ID or Social Security Number: _____

Marital Status (Natural Persons): _____    Date of Birth: _____

Citizen of or State of Organization: _____

Principal Address: _____
(street)

_____        _____        _____
(city)                 (state)                (zip)

Telephone Number: _____

Mailing Address:
(if different)    _____
(street)

_____        _____        _____
(city)                 (state)                (zip)

Co-Purchaser Information:

Name of Individual or Entity: _____

Federal Tax ID or Social Security Number: _____

Marital Status (Natural Persons): _____    Date of Birth: _____

Citizen of or State of Organization: _____

Principal Address: _____
(street)

_____        _____        _____
(city)                 (state)                (zip)

1

Telephone Number: _____

Mailing Address: _____
(if different)                                    (street)

_____            _____            _____
        (city)                          (state)                          (zip)

Indicate Type of Ownership:

_____ Individual                           _____ Keogh Plan

_____ Tenants by the Entireties*           _____ Trust

_____ Joint tenants with Rights of                 Partnership
        Survivorship*

_____ Community Property*                  _____ Limited Liability Company

_____ Tenants in Common*                   _____ Corporation

_____ Individual Retirement Account (IRA)*         Uniform Gift to Minors Act
        (signature of Custodian also required)       State:
                                                     Custodian's Name:
_____ Pension Plan                                 Minor's Name:


*Two or more signatures required

2

AMB NEW GENERATION DATA EMPOWERMENT, LLC

SUBSCRIPTION AGREEMENT

AMB New Generation Data Empowerment, LLC
Attention: Steven Meister
11 Knight Hill Court
Buffalo Grove, Illinois 60089

## 1.  **SUBSCRIPTION**

Subject to the terms and conditions contained herein, the undersigned hereby offers and agrees to purchase the principal amount of promissory notes (the "Promissory Note"), shown on the signature page hereof to be issued by AMB New Generation Data Empowerment, LLC (the "Company"), without interest. The Promissory Note shall be issued in the amount $100,000.00 (a "Promissory Note Unit"). The principal balance of the Promissory Note shall be due and payable in full one year after the date of issuance. No interest shall accrue or be paid on the Promissory Note. In lieu of interest, the Promissory Note Unit shall entitle the holder thereof to receive 14 limited liability company membership interests in the Company (the "Membership Interests"). If this offering is fully subscribed, the Membership Interests would constitute 1.4 of the issued and outstanding membership interests in the Company as of the date hereof. The Promissory Note and the Membership Interests are hereinafter collectively referred as the "Offered Securities." The offer of the Offered Securities is hereinafter referred to as the "Offering." The undersigned has submitted a check/money order or has wired the necessary monies to "AMB New Generation Data Empowerment, LLC." In the case of wire transfers, the undersigned has provided evidence to enable the Company to verify receipt.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE COMPANY AND THE TERMS OF THE OFFERING INCLUDING THE MERITS AND RISKS INVOLVED, SOME OF WHICH ARE DESCRIBED IN THE SECTION HEADED "SPECIAL INFORMATION REGARDING INVESTMENT CONSIDERATIONS." THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT OR OF ANY OTHER INFORMATION PROVIDED TO SUBSCRIBERS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFER AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT IN COMPLIANCE WITH THE SECURITIES ACT OF 1933, AS AMENDED, AND APPLICABLE STATE SECURITIES LAWS, OR EXEMPTIONS THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## II.    TERMS OF THE OFFERING; DESCRIPTION OF THE BUSINESS

The Company is a newly formed Illinois limited liability company which was formed connection with the contribution by AMB Dataminers, Inc., an Illinois corporation ("AMB") substantially all of its assets and properties to the Company in exchange for Compa Membership Interests. The Company is offering up to $100,000.00 in principal amount Promissory Notes. Each $100,000 Promissory Note Unit shall entitle the subscriber to recei 14 limited liability company membership interests in the Company. It is anticipated that th entire offering shall be purchased by a single investor. The Company reserves the right to reje any subscription, in whole or in part, for any reason in its sole discretion.

## III.   OFFERING AND SALE OF NOTES

The offering price of the Promissory Notes has been determined unilaterally by th Company and is not the result of arm's-length negotiations. The offering of the Promisso Notes (the "Offering") is being made on a best-efforts basis. $100,000.00 maximum (th "Maximum Offering Amount"). The Promissory Notes will be issued upon acceptance of subscription by the Company. The Company will continue the Offering until the earliest occur of (i) June 30, 2008, (ii) sale of the Maximum Offering Amount or (iii) such other date the Company may determine, in its sole discretion. The Company may reject any subscriptio in whole or in part, in its sole and absolute discretion.

## IV.    OFFERING MATERIALS

The undersigned hereby acknowledges receipt of the following offering materials for th Promissory Notes:

1.    Company Business Plan dated March 10, 2008;

2.    Form Promissory Note;

3.    Operating Agreement;

4.    Subscription Agreement; and

5.    Purchaser Questionnaire.

In addition, the undersigned acknowledges having been presented with an opportunity t review copies of any additional information concerning the Company, which the Company has i its possession. All of the above referenced materials are collectively referred to as the "Offerin Documents."

## V.    ACCREDITATION

The undersigned understands that the Offered Securities are not being registered unde the Securities Act of 1933, as amended (the "Securities Act"), or the securities acts of any stat (the "Laws") and are being offered and sold in reliance upon exemptions from registration unde the Securities Act and the Laws. To enable the Company to offer and sell the Offered Securitie

2

in reliance on these exemptions, each investor must be an "accredited investor" and furth[er] represents that he or she has a net worth (including home, home furnishings and automobiles) at least $1,000,000. The undersigned has initialed as many of (a) through (g) below which a[re] applicable.

An "Accredited Investor" means any person who comes within any of the followi[ng] categories, or who the Company reasonably believes comes within any of the followi[ng] categories, at the time of sale of Offered Securities to that person:

[   ] a.    A natural person whose individual net worth, or joint net worth with t[he] undersigned's spouse, at the time of purchase, exceeds $1,000,000 (net worth, for purposes [of] the Offering, unless otherwise noted includes home, home furnishings and automobiles. F[or] Illinois investors, such net worth may not include home, home furnishings and automobiles).

[   ] b.    A natural person who had an individual income in excess of $200,000 in each [of] the two most recent years or joint income with that person's spouse in excess of $300,000 each of those years, and has a reasonable expectation of reaching the same income level in t[he] current year.

[   ] c.    Any organization described in Section 501(c)(3) of the Internal Revenue Cod[e,] corporation, Massachusetts or similar business trust, or partnership not formed for the specifi[c] purpose of acquiring the Promissory Notes offered with assets in excess of $5,000,000.

[   ] d.    Any bank as defined in section 3(a)(2) of the Act, or any savings and loa[n] association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in i[ts] individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of t[he] Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Ac[t;] any investment company registered under the Investment Company Act of 1940 or a busine[ss] development company as defined in section 2(a)(48) of that Act; any Small Business Investmen[t] Company licensed by the U.S. Small Business Investment Act of 1958; any plan established an[d] maintained by a state, its political subdivisions, or any agency or instrumentality of a state or i[ts] political subdivisions, for the benefit of its employees, if such plan has total assets in excess [of] $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Incom[e] Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in sectio[n] 3(21) of such Act, which is either a bank, savings and loan association, insurance company, [or] registered investment adviser, or if the employee benefit plan has total assets in excess [of] $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that a[re] accredited investors.

[   ] e.    Any private business development company as defined in section 202(a)(22) [of] the Investment Advisers Act of 1940.

[   ] f.    Any director or executive officer of the Company.

[   ] g.    Any entity in which all of the equity owners are accredited investors.

## PLEASE INITIAL THE STATEMENT(S) ABOVE WHICH ARE TRUE AS T[O] YOU OR THE ENTITY IN THE BRACKETS TO THE LEFT THEREOF. ON[LY]

OR MORE STATEMENTS MUST BE INITIALED BY THOSE WISHING ' INVEST. IF NO INITIALS ARE PROVIDED BELOW, THIS DOCUME! CANNOT BE ACCEPTED FOR SUBSCRIPTION. IF THE PROMISSO! NOTES ARE BEING PURCHASED ON BEHALF OF AN INDIVIDU, RETIREMENT ACCOUNT ("IRA"), KEOGH PLAN OR SIMILAR FIDUCIAl ACCOUNT, THE REPRESENTATIONS BELOW SHOULD BE MADE ( BEHALF OF THE BENEFICIARY OR DONOR WHO DIRECTLY ( INDIRECTLY SUPPLIES THE FUNDS FOR INVESTMENT.

**VI.    REPRESENTATIONS AND WARRANTIES**

The undersigned hereby represents, warrants and understands that:

(1)    if any of the information contained in the Subscription Documents is or becom incorrect with respect to the undersigned, the undersigned will promptly notify t Company;

(2)    the undersigned is an "accredited investor" as defined in Section V above and h a net worth of at least $1,000,000;

(3)    the Offered Securities subscribed for herein will be purchased solely by and f the account of the undersigned for investment, and are not being purchased f subdivision, fractionalization, resale or distribution; the undersigned has a contract, undertaking, agreement or arrangement with any person to sell, transf or pledge all or any part of the Offered Securities for which the undersigne hereby subscribes, and the undersigned has no plan or intent to enter into any suc contract, undertaking or arrangement;

(4)    the Company will have no obligation to recognize the ownership, beneficial ( otherwise, of the Offered Securities by anyone but the undersigned;

(5)    the Offered Securities have not and will not be registered under the Securities A( or the securities laws of any state (the "Laws"), and must be held indefinitel unless they are subsequently registered under the Securities Act and the Laws, ( exemptions from such registration are available and the undersigned may nc transfer the Offered Securities, or any interest therein, unless and until th Company shall have consented thereto (which consent may be withheld in th absolute discretion of management of the Company), provided further that th undersigned shall provide, if the Company so requires, an opinion of counse satisfactory to the Company, that the intended disposition will not violate th Securities Act or the Laws or the rules and regulations of the Securities an Exchange Commission or of any state securities commission promulgate thereunder;

(6)    the Company does not have any obligation or intention to register the Offere Securities under any federal or state securities act or law, or to file the reports t make public the information required by Rule 144 under the Securities Act;

4



(7)    the undersigned must generally hold the Offered Securities for a minimum peri of one year and may not sell, transfer, pledge or otherwise dispose of the Offer Securities except in compliance with the Securities Act and the Laws exemptions therefrom;

(8)    the undersigned alone or with his or her Purchaser Representative (if applicabl has knowledge and experience in financial and business matters, in general and investments in corporations in particular;

(9)    the undersigned has participated in other privately placed investments and/or or she has the capacity to protect his or her own interest in investments like th subject investment and that he or she is capable of evaluating the merits, risks a other facets of the subject investment;

(10)    the undersigned's financial condition is such that he or she has no need f liquidity with respect to an investment in the Offered Securities;

(11)    the undersigned is able to bear the economic risk of the investment in the Offer Securities for an indefinite period of time, including the risk of losing all of his her investment, and the loss of his or her entire investment in the Offer Securities would not materially adversely affect the standard of living of th undersigned and his or her family;

(12)    the undersigned has either secured independent tax advice with respect to a investment in the Offered Securities, upon which he or she, alone or with his her Purchaser Representative (if applicable), is relying, or he or she is sufficientl familiar with the income taxation of corporations that he or she deemed suc independent advice to be unnecessary;

(13)    the undersigned, either alone or with the assistance of his or her purchase representative (as that term is defined under Rule 501(h) of Regulation D), if any has had an opportunity to ask questions of and receive answers from dul designated representatives of the Company concerning the terms and condition of the Offering and the Company generally and has been afforded an opportunit to examine those documents and other information which the undersigned or hi or her representative, if any, has requested for the purpose of evaluating a investment in the Offered Securities and for the purpose of answering an questions the undersigned or his or her representative, if any, may hav concerning the business and affairs of the Company;

(14)    in evaluating the suitability of an investment by the undersigned in the Company the undersigned has relied solely upon the materials made available to th undersigned at the undersigned's request and independent investigations made b the undersigned in making the decision to purchase the Promissory Note subscribed for herein, and acknowledges that no representations or warrantie (oral or written), have been made to the undersigned with respect thereto;

(15)  the undersigned was not induced to invest by any form of general solicitation general advertising including, but not limited to: (a) any advertisement, artic notice or other communication published in any newspaper, magazine or simi media or broadcast over the television or radio; (b) any seminar or meeting wh attendees had been invited by any general solicitation or general advertising;

(16)  the undersigned is aware of the fact that (a) the Company is a development sta company with a limited operating history and (b) investment in the Offer Securities is very speculative and involves a high degree of risk of loss of a entire investment;

(17)  no federal or state agency has reviewed or passed upon the adequacy of t offering, made any finding or determination as to the fairness for investment, any recommendation or endorsement of the Offered Securities as an investment;

(18)  all information provided by the undersigned is true and accurate as of the date s forth on the subscription page hereof, and if there should be any change in su information prior to the acceptance of his or her subscription for the Promisso Notes that he or she is purchasing, the undersigned will immediately provide su information to the Company.

## VII.  INDEMNIFICATION

The undersigned hereby agrees to indemnify each of the Company and its member managers, officers, employees and agents and to hold each of them harmless against any and a loss, damage, liability or expense, including reasonable attorneys' fees, which they or any c them may suffer, sustain or incur by reason of or in connection with any misrepresentation c breach of warranty or agreement made by the undersigned.

## VIII.  ACCEPTANCE AND REVOCATION

The undersigned understands and agrees that this subscription may be accepted c rejected by the Company, in whole or in part, in its sole and absolute discretion, and if accepte the Promissory Notes purchased pursuant hereto will be issued only in the name of th undersigned. The undersigned hereby acknowledges and agrees that the undersigned may no cancel, revoke or withdraw this Subscription Agreement, and that this Subscription Agreemen and the documents submitted herewith shall survive (a) changes in the transactions, document and instruments provided to or explained to the undersigned that are not material and (b) th death or disability of the undersigned.

## IX.  INFORMATION REGARDING INVESTMENT CONSIDERATIONS

In addition to the other factors that may impact upon an investment in th Company, investors should consider the following important information. THI: INFORMATION DOES NOT CONSTITUTE A COMPLETE DESCRIPTION OF ALl OF THE FACTORS THAT MAY IMPACT AN INVESTMENT IN THE PROMISSOR NOTES AND THE MEMBERSHIP INTERESTS. INVESTORS ARE URGED TC CONDUCT THEIR OWN INVESTIGATION AND TO REQUEST WHATEVEl

6



INFORMATION THEY DEEM NECESSARY FROM THE COMPANY TO EVALUA
AN INVESTMENT IN THE PROMISSORY NOTES AND THE MEMBERSH
INTERESTS.

## Limited Operating History of the Company; Increased Development Costs

The Company is a newly formed limited liability company, but AMB Dataminers, I
has over 10 years of operational and development experience. The Company will be entir
dependent upon the efforts of its key personnel. The Company is at a stage of its developme
where it anticipates that increased efforts will be required to develop its customer ba
Accordingly, operations of the Company are subject to the many risks inherent in expanding
business enterprise, including unanticipated expenses. There is no assurance that the Compa
will be able to operate on a profitable basis.

## Illiquidity of Investment

There is no public market for the Offered Securities and none is expected to develo
The Offered Securities will be subject to restrictions on transfer.

## The Promissory Notes are Unsecured

The Promissory Notes are unsecured obligations of the Company. The Company ma
issue other notes which either are secured or are entitled to a priority in payment over th
Promissory Notes.

## Dependence on Key Personnel

The Company's success depends in significant part upon the continued services of its ke
technical, sales and senior management personnel. Should any of them depart, operations coul
be adversely affected. The Company's success depends on the Company's ability to attract an
retain highly trained technical, sales and management personnel. The Company will need t
continue to hire additional personnel as its business grows. There are shortages of such personn
in the current labor market. Shortages of qualified personnel could limit the ability of th
Company to increase sales of existing products or services or to launch new products or services

## Risks Associated with Planned Expansion

The Company's business plan calls for the building of a customer base through Reseller
Trade Shows, OEM Partners, Consulting Company Partners and Webinars/email marketing. N
assurances can be given that this customer base will develop. In addition, the Company's abilit
to attract customers is dependent on its success in attracting and retaining competent sale
personnel and on its ability to establish partnerships. The implementation of the Company'
marketing plans will increase payroll and other operating costs of the Company. No assurance
can be given that the Company will be able to assimilate the growth required to implement it
expanded marketing plan, either from a cost or an operational standpoint.

7



Development Timing

The Company has aggressive timetables for the marketing of its products. Meeting of timetables is a function of continued, uninterrupted funding, as well as the ability to me scheduled technological developments on a timely basis. Failure to meet any phase of timetable will have the effect of delaying subsequent phase developments as well and could ha a material adverse effect upon the Company's business, results of operations and financi condition. There can be no assurances that the Company will be able to meet its schedul timetables, if at all.

Competition

The market served by the Company is highly competitive and there are few substanti barriers to entry. Competition among companies that provide similar services is intense and expected to increase significantly in the future. AMB's current perceived competition would l IBM, Oracle, SAS (DataFlux), Trillium and Informatica.

These companies may have greater name recognition and more established relationshi within the industry than the Company. Such competitors may be able to undertake mo extensive marketing campaigns, obtain more attractive servicing models, adopt more aggressi pricing policies and devote substantially more resources to competing in the Company industry.

Because the operations and strategic plans of existing and future competitors a undergoing rapid change, it is difficult for the Company to anticipate which companies are like to offer competitive services in the future. There can be no assurance that the Company will l able to compete successfully against current or future competitors.

Uncertain Acceptance of the Company's Products and Services

The Company's ability to establish and maintain a leadership position in providing i products will depend on, among other things: (i) the Company's success in forging partnershi with third-party equipment vendors; (ii) the Company's ability to target and qualify prospects f installation; (iii) the Company's marketing and sales efforts; (iv) the Company's ability provide customer support and service; and (v) the Company's ability to develop and maintai brand recognition for its providers. The Company operates in a market that is in an early stag of development, is rapidly evolving and is characterized by an increasing number of mark entrants who have introduced or developed competing services. As is typical in the case of new and rapidly evolving industry, demand and market acceptance for recently introduce products and services are subject to a high level of uncertainty and risk. Sales of the Company products may require an extended sales effort in certain cases. Because the market for th Company's services is new and evolving, it is difficult to predict the size of this market and i growth rate, if any. If the market fails to develop, develops more slowly than expected c becomes saturated with competitors, the Company's business, results of operations and financi condition could be materially adversely affected.



8

The Company may be unable to attract or retain clients

The Company's long-term success depends on its ability to deploy its products to En Users, Software Vendors and Consulting/Services Companies. The Company continues develop its products and intends to invest significant resources in marketing this product. Tl Company cannot be certain that its marketing efforts will generate additional clien Competition from the Company's competitors is likely to increase, and may cause some of i clients to switch to its competitors' products and services.

The Company's Operating Results may Fluctuate

The Company's operating results may fluctuate significantly in the future as a result of variety of factors, many of which are outside the Company's control. Factors that may affect tl Company's operating results include: (i) the amount and timing of capital expenditures and oth costs relating to the expansion of the Company's operations; (ii) price competition or pricir changes in licensing of competitive products by other software providers; (iii) technic difficulties with respect to the Company's products; (iv) the introduction of new products < services by the Company or its competitors; and (v) general economic conditions and economi conditions specific to the Data Quality/Management industry. Any one of these factors coul cause the Company's revenues and operating results to vary significantly in the future. I addition, as a strategic response to changes in the competitive environment, the Company ma from time to time make certain pricing, service or marketing decisions or acquisitions that coul cause significant declines in the Company's operating results.

The Company must adapt to technology trends and evolving industry standards

The market for Data Profiling/Quality/Management systems is characterized by rapi technological developments, frequent new product introductions and evolving industr standards. The emerging character of these products and services and their rapid evolution wi require the Company to effectively use leading technologies, continue to develop it technological expertise, enhance its current services and continue to improve the performanc features and reliability of its products. There can be no assurance that the Company will b successful in responding quickly, cost effectively and sufficiently to these or other suc developments. In addition, the widespread adoption of new technologies or standards coul require substantial expenditures by the Company to modify or adapt its services. A failure by th Company to rapidly respond to technological developments could have a material adverse effec on the Company's business, results of operations and financial condition.

There is no Public Market and the Offered Securities are not Marketable or Transferable

There is no public market for any of the Company's securities, including the Promissor Notes and the Membership Interests, and no such market is expected to develop in th foreseeable future. The Membership Interests are subject to restrictions on transfer and may no be transferred or resold except as permitted under the Securities Act and applicable stat securities laws, pursuant to registration or qualification or exemption therefrom. Consequently investors' ability to liquidate their investment in the Company on a timely basis is severely limited. Investors should be prepared to hold the Offered Securities indefinitely. The Compan



gives no assurance that it will ever conduct an initial public offering or that a market for any
its securities will develop or be sustained in the future.

The Company may issue Additional Securities in the Future

If the Company in the future raises additional funds through the issuance of equi
securities, such equity securities may have rights, preferences or privileges senior to those of th
Company's Membership Interests. The issuance of additional equity securities may dilute t
holder's ownership interest in the Company and subject the holder to the rights, preferences
privileges of the new equity securities, which could be senior to those of the existin
Membership Interests.

Management's Ability to Direct Use of Proceeds

The Company intends to use the net proceeds of this Offering for several purpose
including for general corporate purposes. Accordingly, management of the Company will hav
substantial discretion in applying the net proceeds to be received by the Company. There can l
no assurance that the Company will utilize the net proceeds in a manner that enhances memb
value. The proceeds of this Offering are not subject to any escrow or minimum procee
requirement and may be used by the Company immediately upon receipt.

The Company's future growth will require significant amounts of additional capital and failure t
obtain additional capital could significantly impair its ability to implement its business strategy

The expansion and development of the Company's business and the marketing of i
products will require significant amounts of additional capital to fund debt service and cash flo
deficits. Although management anticipates that the Company's existing funds and the n
proceeds of this offering will fund the commencement of its marketing and product developme
efforts, the Company will need additional capital. The Company may require addition
financing or require financing sooner than anticipated if its development plans change or prov
to be inaccurate. If the Company is unable to raise additional funds when needed, it will l
required to significantly scale back its operations. There can be no assurance that addition
capital will be available on acceptable terms, or at all. Any additional debt that the Compan
incurs during the next few years to finance its expansion could require the Company to dedicat
a substantial portion of its future cash flow from operations to the repayment of that deb
thereby reducing the funds available for other business purposes, limiting the Company's abilit
to obtain additional financing and placing the Company at a competitive disadvantage compare
to competitors who have less debt than the Company. This could have an adverse effect on th
Company's business, operating results and financial condition.

The Company relies on a combination of licenses, confidentiality agreements and othe
contracts to establish and protect its intellectual property rights. The steps it has taken may b
inadequate to protect its technology or other intellectual property. Third parties may asser
infringement claims against the Company and, in the event of an unfavorable ruling on an
claim, the Company may be unable to obtain a license or similar agreement to use intellectua
property that it relies upon to conduct its business. In addition, these claims may diver
management's attention away from the business and be costly to defend.

10



The Company relies on unpatented trade secrets and know-how to maintain competitive positions, which it seeks to protect, in part, by confidentiality agreements wi employees, consultants and others. However, these agreements may be breached or terminate and the Company may not have adequate remedies for any breach. In addition, the Company competitors may otherwise learn or discover its trade secrets. The Company currently has i patents or patent applications pending.

Private Offering; Lack of Agency Review

Since the Offering is a non-public offering, and, as such, is not registered under federal state securities laws, prospective investors will not have the benefit of review by the Securiti and Exchange Commission or any state securities commission.

Indemnification of Officers and Directors

The Company intends to indemnify its managers and members to the fullest exte permissible under the law. Under most circumstances, the Company's managers and membe may not be held liable to the Company or its members for errors in judgment or other acts omissions in the conduct of the Company's business unless such errors in judgment, acts omissions constitute fraud, gross negligence or malfeasance.

## X.    WIRE TRANSFER INSTRUCTIONS

The following are the wire transfer instructions of [_____] fi the Company's Account:

> [Name]
> [Address]
> [ABA Number]
> [Account No.]

## XI.    MISCELLANEOUS

The undersigned hereby intends that the undersigned's signature hereon shall constitute subscription to the Company for the Promissory Note specified on the signature page of th Subscription Agreement.

This Subscription Agreement, and the representations, warranties and agreemen contained herein shall be binding upon the heirs, executors, administrators and other successor of the undersigned. If there is more than one signatory hereto, the representations, warrantie and agreements of the undersigned are made jointly and severally. This Subscription Agreemen shall be governed by and construed in accordance with the laws of the State of Illinois.

The undersigned understands that this Subscription Agreement is not binding upon th Company until accepted in writing by an authorized representative of the Company. Th undersigned also understands that the subscription funds will not otherwise be returned to th undersigned if this subscription is accepted.



The undersigned agrees not to transfer or assign this Agreement, or any of t undersigned's interest herein.

The Subscription Documents constitute the entire agreement among the parties here with respect to the subject matter hereof and may be amended only by a written execution of parties.

## AMB NEW GENERATION DATA EMPOWERMENT, LLC
### SUBSCRIPTION AGREEMENT – INDIVIDUALS
### COUNTERPART SIGNATURE PAGE

The undersigned hereby subscribes for the principal amount of Promissory Notes forth below, and agrees to be bound by the terms of the Subscription Agreement and Purchaser Questionnaire of which this Agreement is a part.

PLEASE NOTE THAT ONE OR MORE BRACKETS ON PAGES 3 AND 4 MUST INITIALED IN ORDER FOR THIS SUBSCRIPTION TO BE CONSIDERED. EAC NATURAL PERSON MUST INITIAL (a), (b) OR (f) TO QUALIFY AS AN ACCREDITE INVESTOR.

EXECUTED this _____ day of _____ 2008, at _____, _____

Principal amount of Promissory Note: $ _____

_____
(Signature of Subscriber)

_____
(Signature of Co-Subscriber)

_____
(Printed Name of Subscriber)

_____
(Printed Name of Co-Subscriber)

---

### ACCEPTANCE

Accepted this _____ day of _____, 2008 at Chicago, Illinois.

AMB NEW GENERATION DATA
EMPOWERMENT, LLC,
an Illinois limited liability company

By: _____
Title: _____

13

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP
INTERESTS ARE TO BE HELD IN CORPORATE NAME]

### CORPORATE CERTIFICATE

CERTIFICATE OF _____

(Name of Corporation)

The undersigned, being the (Assistant) Secretary and keeper of the minutes
_____ a _____ (state) corporation (the "Corporation"), hereby certifies that the
following is a true and complete copy of resolutions duly adopted by the Board of Directors
the Corporation which are in full force and effect and have not been superseded or amended.

WHEREAS, the Corporation has decided that it is in its best interest to make an
investment in the Promissory Notes issued by **AMB NEW GENERATION DAT
EMPOWERMENT, LLC** (the "Company").

NOW, THEREFORE, BE IT:

RESOLVED, that the Corporation hereby is authorized and directed to make an
investment in Promissory Notes and Membership Interests issued by the Company of the typ
and to the extent set forth in that certain Subscription Agreement (the "Subscription Agreement"
of the Company.

FURTHER RESOLVED, that the President or any Vice President of the Corporation
acting alone, is hereby authorized and directed on behalf of the Corporation to execute and
deliver the Subscription Agreement and Purchaser Questionnaire and all other necessary an
appropriate documents, including evidences of indebtedness and the pledging of securit
therefor, as may be required under the terms and conditions of the Subscription Agreement, th
governing documents of the Company or otherwise, including any amendments to any of th
foregoing and to take such other necessary and appropriate action, in his or her sole discretio
and without further resolution of this Board of Directors to consummate the purchase of th
Promissory Notes and Membership Interests issued by the Company and to effectuate the term
and intent of these resolutions.

IN WITNESS WHEREOF, I have executed this certificate as the (Assistant) Secretary o
the Corporation this ____ day of _____, 2008, and declare that it is truthful an
correct.

By: _____

(Assistant) Secretary



16

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP
INTEREST ARE TO BE HELD IN GENERAL PARTNERSHIP NAME]

## GENERAL PARTNERSHIP CERTIFICATE

CERTIFICATE OF _____ (the "Partnership")
(Name of Partnership)

The undersigned, constituting all requisite signatories of the Partnership, a
_____ (state) general partnership, hereby certify as follows:

1.     That the Partnership commenced business on _____. ____ and w
established pursuant to a partnership agreement dated _____ . .. _____ (t
"Agreement").

2.     That a true and correct copy of the Agreement is attached hereto and that, as
the date hereof, the Agreement has not been amended (except as to any attached amendments)
revoked and is still in full force and effect.

3.     That the requisite partners of the Partnership have determined that an investme
in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DA1
EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscripti
Agreement is of benefit to the Partnership and has determined to make such investment on beh
of the Partnership and has full power and authority to do so and thereby bind the Partnership.

IN WITNESS WHEREOF, we have executed this certificate as the requisite partners
the Partnership this ___ day of _____, 2008, and declare that it is truthful a
correct.

By: _____ _____
                    Partner

By: _____ _____
                    Partner

By: _____ _____
                    Partner

17

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP
INTEREST ARE TO BE HELD IN LIMITED PARTNERSHIP NAME]

## LIMITED PARTNERSHIP CERTIFICATE

CERTIFICATE OF _____Rahfco Select_____ (the "Partnership")
(Name of Partnership)

The undersigned, constituting all requisite signatories of the Partnership, a
_____ (state) limited partnership, hereby certify as follows:

1. That the Partnership commenced business on _____, _____ and v
established pursuant to a partnership agreement dated _____, _____ (
"Agreement").

2. That a true and correct copy of the Agreement is attached hereto and that, as
the date hereof, the Agreement has not been amended (except as to any attached amendments
revoked and is still in full force and effect.

3. That the requisite partners of the Partnership have determined that an investm
in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DA**
**EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscript
Agreement is of benefit to the Partnership and has determined to make such investment on bel
of the Partnership and has full power and authority to do so and thereby bind the Partnership.

IN WITNESS WHEREOF, we have executed this certificate as the requisite partners
the Partnership this ____ day of _____, 2008, and declare that it is truthful a
correct.

_____Rahfco Select_____
Limited Partnership

By: _____
Its: General Partner

18

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP
INTERESTS ARE TO BE HELD IN CORPORATE NAME]

## LIMITED LIABILITY COMPANY CERTIFICATE

CERTIFICATE OF _____

(Name of Limited Liability Company)

The undersigned, constituting all requisite signatories of _____
a(n) _____ (state) limited liability company (the "Company"), hereby certifies
follows:

1. That the Company commenced business on _____ and w
established pursuant to an operating agreement dated _____, _____ (
"Agreement").

2. That a true and correct copy of the Agreement is attached hereto and that, as
the date hereof, the Agreement has not been amended (except as to any attached amendments)
revoked and is still in full force and effect.

3. That the requisite partners of the Company have determined that an investmen
Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DA**
**EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscript
Agreement is of benefit to the Company and has determined to make such investment on beh
of the Company and has full power and authority to do so and thereby bind the Company.

IN WITNESS WHEREOF, we have executed this certificate as the requisite members
the Company this ____ day of _____, 2008, and declare that it is truthful and corre

By: _____
　　　　　　　　　　　Member


By: _____
　　　　　　　　　　　Member


By: _____
　　　　　　　　　　　Member

19

# EXHIBIT C

Investor Name: RAHFCO

$300,000.00 Principal Amount Promissory Notes
without Interest
and Membership Interests in AMB New Generation Data Empowerment, LLC

to be issued by

AMB NEW GENERATION DATA EMPOWERMENT, LLC
an Illinois limited liability company

May 15, 2008

SUBSCRIPTION DOCUMENTS

## GENERAL INFORMATION

The information contained herein is being furnished by the undersigned inves enable AMB New Generation Data Empowerment, LLC, an Illinois limited liability con (the "Company") to determine whether, under Sections 3(b) and/or 4(2) of the Securities . 1933, as amended. (the "Securities Act"), and Regulation D ("Regulation D") promu thereunder, the undersigned investor meets the qualification and suitability requirements investment in promissory notes of the Company (the "Promissory Notes"). The Prom Notes shall be issued in denominations of $300,000.00 each (a "Promissory Note Unit"), principal balance of the Promissory Note shall be due and payable in full, one year after the of issuance. No interest shall accrue or be paid on the Promissory Notes. In lieu of interest Promissory Note Unit shall entitle the holder thereof to receive 42 limited liability con membership interests in the Company (the "Membership Interests"). If the offering is subscribed, the Membership Interests would constitute 4.2% of all of the issued and outstar membership interests in the Company as of the date hereof.

The undersigned investor understands that: (i) the Company will rely upor information contained herein for making the determination whether the investor meets qualification and suitability requirements described herein; (ii) neither the Promissory Note the Membership Interests (collectively, the "Offered Securities"), will be registered unde Securities Act in reliance upon the exemption from registration provided by Sections 3(b) ar 4(2) of the Securities Act and Regulation D; and (iii) the purchase of the Offered Securities be solely for the account of the undersigned investor and not for the account of any other pe or with a view toward resale, assignment, fractionalization or distribution thereof.

The undersigned investor must represent to the Company that he or she has adeq means of providing for current needs and possible personal contingencies and has no need liquidity of this investment.

Please contact Steven Meister, the Manager of the Company, at (847) 791-7838 (with questions you may have concerning an investment in the Offered Securities.

## SUBSCRIPTION INSTRUCTIONS

AFTER YOU HAVE HAD AN OPPORTUNITY TO OBTAIN ALL T INFORMATION YOU REQUIRE CONCERNING THE COMPANY AND THIS OFFERI AND HAVE DECIDED TO SUBSCRIBE FOR AND PURCHASE THE PROMISSOI NOTES AND THE MEMBERSHIP INTERESTS YOU MUST COMPLETE TI PURCHASER QUESTIONNAIRE AND SUBSCRIPTION AGREEMENT (TI "SUBSCRIPTION DOCUMENTS") AND VERIFY THAT YOU ARE AN "ACCREDITI INVESTOR." PLEASE READ THE FOLLOWING INSTRUCTIONS TO ASCERTAIN HO TO COMPLETE THE SUBSCRIPTION DOCUMENTS WHICH MUST BE COMPLETED I EACH SUBSCRIBER:

1.     Natural Persons.

i

- Verify that you are an accredited investor by checking the appropriate i Section V of the Subscription Agreement.

- Execute the Subscription Documents on the signature line near the top of Pa

If the investment is being made by joint or co-tenants then:

- Each joint or co-tenant must complete the Purchaser Questionnaire inc herein.

- Each joint or co-tenant must execute the Subscription Documents on the sigr line near the top of Page 13.

2.  Entities.

- Verify that the entity is an "accredited investor" by checking the appropriate in Section V of the Subscription Agreement.

- The authorized officer of the entity must execute the Subscription Agreec print the entity's name above his or her signature and indicate his or her titl the signature line near the top of Page 14 or 15.

- The authorized officer must also complete the applicable entity level certifi contained on Pages 16-20 of the Subscription Agreement and attach a copy o entity's governing documents.

- The authorized officer of the entity must also attach a copy of the resolut supporting the relevant certificate.

AMB NEW GENERATION DATA EMPOWERMENT, LLC
PURCHASER QUESTIONNAIRE
(provide all applicable information)

## TO BE COMPLETED BY ALL SUBSCRIBERS

(Please print or type)

Principal Amount of Promissory Notes: _____

Purchaser Information:

Name of Individual or Entity: _____

Federal Tax ID or Social Security Number: _____

Marital Status (Natural Persons): _____ Date of Birth: _____

Citizen of or State of Organization: _____

Principal Address: _____
                                            (street)

_____        _____        _____
     (city)                     (state)                     (zip)

Telephone Number: _____

Mailing Address:
(if different)        _____
                                            (street)

_____        _____        _____
     (city)                     (state)                     (zip)

Co-Purchaser Information:

Name of Individual or Entity: _____

Federal Tax ID or Social Security Number: _____

Marital Status (Natural Persons): _____ Date of Birth: _____

Citizen of or State of Organization: _____

Principal Address: _____
                                            (street)

_____        _____        _____
     (city)                     (state)                     (zip)

1

Telephone Number: ___ ___ ___ ___ ___ ___

Mailing Address: ___ ___ ___ ___ ___ ___
(if different)
_____
(street)

___ ___ ___ ___ ___ ___ ___
(city)                    (state)                    (zip)

Indicate Type of Ownership:

_____ Individual

_____ Tenants by the Entireties*

_____ Joint tenants with Rights of
Survivorship*

_____ Community Property*

_____ Tenants in Common*

_____ Individual Retirement Account (IRA)*
(signature of Custodian also required)

_____ Pension Plan

_____ Keogh Plan

_____ Trust

_____ Partnership

_____ Limited Liability Company

_____ Corporation

_____ Uniform Gift to Minors Act
State:
Custodian's Name:
Minor's Name:

*Two or more signatures required

2

## AMB NEW GENERATION DATA EMPOWERMENT, LLC

### SUBSCRIPTION AGREEMENT

AMB New Generation Data Empowerment, LLC
Attention: Steven Meister
11 Knight Hill Court
Buffalo Grove, Illinois 60089

## 1. SUBSCRIPTION

Subject to the terms and conditions contained herein, the undersigned hereby offers agrees to purchase the principal amount of promissory notes (the "Promissory Note"), show the signature page hereof to be issued by AMB New Generation Data Empowerment, LLC "Company"), without interest. The Promissory Note shall be issued in the amoun $300,000.00 (a "Promissory Note Unit"). The principal balance of the Promissory Note sha due and payable in full one year after the date of issuance. No interest shall accrue or be pai the Promissory Note. In lieu of interest, the Promissory Note Unit shall entitle the holder th to receive 42 limited liability company membership interests in the Company (the "Member Interests"). If this offering is fully subscribed, the Membership Interests would constitute 4 of the issued and outstanding membership interests in the Company as of the date hereof. Promissory Note and the Membership Interests are hereinafter collectively referred as "Offered Securities." The offer of the Offered Securities is hereinafter referred to as "Offering." The undersigned has submitted a check/money order or has wired the neces monies to "AMB New Generation Data Empowerment, LLC." In the case of wire transfers, undersigned has provided evidence to enable the Company to verify receipt.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THE OWN EXAMINATION OF THE COMPANY AND THE TERMS OF THE OFFERIN INCLUDING THE MERITS AND RISKS INVOLVED, SOME OF WHICH A DESCRIBED IN THE SECTION HEADED "SPECIAL INFORMATION REGARDI INVESTMENT CONSIDERATIONS." THESE SECURITIES HAVE NOT BE RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION ( REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITI HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY ( THIS DOCUMENT OR OF ANY OTHER INFORMATION PROVIDED TO SUBSCRIBER ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS ARE SUBJEC TO RESTRICTIONS ON TRANSFER AND MAY NOT BE TRANSFERRED OR RESOL EXCEPT IN COMPLIANCE WITH THE SECURITIES ACT OF 1933, AS AMENDED, AN APPLICABLE STATE SECURITIES LAWS, OR EXEMPTIONS THEREFROM INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR TH FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## II.     TERMS OF THE OFFERING; DESCRIPTION OF THE BUSINESS

The Company is a newly formed Illinois limited liability company which was form connection with the contribution by AMB Dataminers, Inc., an Illinois corporation ("AMB substantially all of its assets and properties to the Company in exchange for Con Membership Interests. The Company is offering up to $300,000.00 in principal amou Promissory Notes. Each $300,000 Promissory Note Unit shall entitle the subscriber to re 42 limited liability company membership interests in the Company. It is anticipated the entire offering shall be purchased by a single investor. The Company reserves the right to : any subscription, in whole or in part, for any reason in its sole discretion.

## III.     OFFERING AND SALE OF NOTES

The offering price of the Promissory Notes has been determined unilaterally by Company and is not the result of arm's-length negotiations. The offering of the Promiss Notes (the "Offering") is being made on a best-efforts basis, $300,000.00 maximum "Maximum Offering Amount"). The Promissory Notes will be issued upon acceptance subscription by the Company. The Company will continue the Offering until the earlie occur of (i) June 30, 2008, (ii) sale of the Maximum Offering Amount or (iii) such other dat the Company may determine, in its sole discretion. The Company may reject any subscript in whole or in part, in its sole and absolute discretion.

## IV.     OFFERING MATERIALS

The undersigned hereby acknowledges receipt of the following offering materials for Promissory Notes:

1.     Company Business Plan dated March 10, 2008;

2.     Form Promissory Note;

3.     Operating Agreement;

4.     Subscription Agreement; and

5.     Purchaser Questionnaire.

In addition, the undersigned acknowledges having been presented with an opportunity review copies of any additional information concerning the Company, which the Company has its possession. All of the above referenced materials are collectively referred to as the "Offerii Documents."

## V.     ACCREDITATION

The undersigned understands that the Offered Securities are not being registered und the Securities Act of 1933, as amended (the "Securities Act"), or the securities acts of any stat (the "Laws") and are being offered and sold in reliance upon exemptions from registration und the Securities Act and the Laws. To enable the Company to offer and sell the Offered Securitie

in reliance on these exemptions, each investor must be an "accredited investor" and I represents that he or she has a net worth (including home, home furnishings and automobil at least $1,000,000. The undersigned has initialed as many of (a) through (g) below whi applicable.

An "Accredited Investor" means any person who comes within any of the folk categories, or who the Company reasonably believes comes within any of the folk categories, at the time of sale of Offered Securities to that person:

[   ]   a.      A natural person whose individual net worth, or joint net worth with undersigned's spouse, at the time of purchase, exceeds $1,000,000 (net worth, for purpos the Offering, unless otherwise noted includes home, home furnishings and automobiles. Illinois investors, such net worth may not include home, home furnishings and automobiles).

[   ]   b.      A natural person who had an individual income in excess of $200,000 in ea the two most recent years or joint income with that person's spouse in excess of $300,00 each of those years, and has a reasonable expectation of reaching the same income level in current year.

[   ]   c.      Any organization described in Section 501(c)(3) of the Internal Revenue C corporation, Massachusetts or similar business trust, or partnership not formed for the spe purpose of acquiring the Promissory Notes offered with assets in excess of $5,000,000.

[   ]   d.      Any bank as defined in section 3(a)(2) of the Act, or any savings and l association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the A any investment company registered under the Investment Company Act of 1940 or a busin development company as defined in section 2(a)(48) of that Act; any Small Business Investm Company licensed by the U.S. Small Business Investment Act of 1958; any plan established ε maintained by a state, its political subdivisions, or any agency or instrumentality of a state or political subdivisions, for the benefit of its employees, if such plan has total assets in excess $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Inco Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in secti 3(21) of such Act, which is either a bank, savings and loan association, insurance company, registered investment adviser, or if the employee benefit plan has total assets in excess $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that ε accredited investors.

[   ]   e.      Any private business development company as defined in section 202(a)(22) the Investment Advisers Act of 1940.

[   ]   f.      Any director or executive officer of the Company.

[   ]   g.      Any entity in which all of the equity owners are accredited investors.

## PLEASE INITIAL THE STATEMENT(S) ABOVE WHICH ARE TRUE AS Τ( YOU OR THE ENTITY IN THE BRACKETS TO THE LEFT THEREOF. ONI

OR MORE STATEMENTS MUST BE INITIALED BY THOSE WISHIN
INVEST. IF NO INITIALS ARE PROVIDED BELOW, THIS DOCUM
CANNOT BE ACCEPTED FOR SUBSCRIPTION. IF THE PROMISS
NOTES ARE BEING PURCHASED ON BEHALF OF AN INDIVII
RETIREMENT ACCOUNT ("IRA"), KEOGH PLAN OR SIMILAR FIDUCI
ACCOUNT, THE REPRESENTATIONS BELOW SHOULD BE MADE
BEHALF OF THE BENEFICIARY OR DONOR WHO DIRECTLY
INDIRECTLY SUPPLIES THE FUNDS FOR INVESTMENT.

## VI.   REPRESENTATIONS AND WARRANTIES

The undersigned hereby represents, warrants and understands that:

(1)   if any of the information contained in the Subscription Documents is or bec
incorrect with respect to the undersigned, the undersigned will promptly notif
Company;

(2)   the undersigned is an "accredited investor" as defined in Section V above and
a net worth of at least $1,000,000;

(3)   the Offered Securities subscribed for herein will be purchased solely by and
the account of the undersigned for investment, and are not being purchased
subdivision, fractionalization, resale or distribution; the undersigned has
contract, undertaking, agreement or arrangement with any person to sell, tran
or pledge all or any part of the Offered Securities for which the undersig
hereby subscribes, and the undersigned has no plan or intent to enter into any s
contract, undertaking or arrangement;

(4)   the Company will have no obligation to recognize the ownership, beneficial
otherwise, of the Offered Securities by anyone but the undersigned;

(5)   the Offered Securities have not and will not be registered under the Securities A
or the securities laws of any state (the "Laws"), and must be held indefinit
unless they are subsequently registered under the Securities Act and the Laws,
exemptions from such registration are available and the undersigned may t
transfer the Offered Securities, or any interest therein, unless and until t
Company shall have consented thereto (which consent may be withheld in t
absolute discretion of management of the Company), provided further that t
undersigned shall provide, if the Company so requires, an opinion of couns
satisfactory to the Company, that the intended disposition will not violate tl
Securities Act or the Laws or the rules and regulations of the Securities an
Exchange Commission or of any state securities commission promulgate
thereunder;

(6)   the Company does not have any obligation or intention to register the Offere
Securities under any federal or state securities act or law, or to file the reports t
make public the information required by Rule 144 under the Securities Act;



(7)    the undersigned must generally hold the Offered Securities for a minimum of one year and may not sell, transfer, pledge or otherwise dispose of the O Securities except in compliance with the Securities Act and the La exemptions therefrom;

(8)    the undersigned alone or with his or her Purchaser Representative (if applic has knowledge and experience in financial and business matters, in general a investments in corporations in particular;

(9)    the undersigned has participated in other privately placed investments and/or she has the capacity to protect his or her own interest in investments lik subject investment and that he or she is capable of evaluating the merits, risk other facets of the subject investment;

(10)   the undersigned's financial condition is such that he or she has no need liquidity with respect to an investment in the Offered Securities;

(11)   the undersigned is able to bear the economic risk of the investment in the Off Securities for an indefinite period of time, including the risk of losing all of h her investment, and the loss of his or her entire investment in the Off Securities would not materially adversely affect the standard of living of undersigned and his or her family;

(12)   the undersigned has either secured independent tax advice with respect to investment in the Offered Securities, upon which he or she, alone or with hi her Purchaser Representative (if applicable), is relying, or he or she is sufficie familiar with the income taxation of corporations that he or she deemed s independent advice to be unnecessary;

(13)   the undersigned, either alone or with the assistance of his or her purcha representative (as that term is defined under Rule 501(h) of Regulation D), if a has had an opportunity to ask questions of and receive answers from d designated representatives of the Company concerning the terms and conditi of the Offering and the Company generally and has been afforded an opportun to examine those documents and other information which the undersigned or or her representative, if any, has requested for the purpose of evaluating investment in the Offered Securities and for the purpose of answering a questions the undersigned or his or her representative, if any, may ha concerning the business and affairs of the Company;

(14)   in evaluating the suitability of an investment by the undersigned in the Compar the undersigned has relied solely upon the materials made available to t undersigned at the undersigned's request and independent investigations made l the undersigned in making the decision to purchase the Promissory Not subscribed for herein, and acknowledges that no representations or warranti (oral or written), have been made to the undersigned with respect thereto;



5

(15) the undersigned was not induced to invest by any form of general solicita general advertising including, but not limited to: (a) any advertisement, notice or other communication published in any newspaper, magazine or media or broadcast over the television or radio; (b) any seminar or meeting attendees had been invited by any general solicitation or general advertising;

(16) the undersigned is aware of the fact that (a) the Company is a development company with a limited operating history and (b) investment in the O Securities is very speculative and involves a high degree of risk of loss entire investment;

(17) no federal or state agency has reviewed or passed upon the adequacy offering, made any finding or determination as to the fairness for investme any recommendation or endorsement of the Offered Securities as an investme

(18) all information provided by the undersigned is true and accurate as of the dat forth on the subscription page hereof; and if there should be any change in information prior to the acceptance of his or her subscription for the Promis Notes that he or she is purchasing, the undersigned will immediately provide information to the Company.

## VII. INDEMNIFICATION

The undersigned hereby agrees to indemnify each of the Company and its memb managers, officers, employees and agents and to hold each of them harmless against any and loss, damage, liability or expense, including reasonable attorneys' fees, which they or any them may suffer, sustain or incur by reason of or in connection with any misrepresentation breach of warranty or agreement made by the undersigned.

## VIII. ACCEPTANCE AND REVOCATION

The undersigned understands and agrees that this subscription may be accepted rejected by the Company, in whole or in part, in its sole and absolute discretion, and if accepte the Promissory Notes purchased pursuant hereto will be issued only in the name of t undersigned. The undersigned hereby acknowledges and agrees that the undersigned may n cancel, revoke or withdraw this Subscription Agreement, and that this Subscription Agreeme and the documents submitted herewith shall survive (a) changes in the transactions, documer and instruments provided to or explained to the undersigned that are not material and (b) d death or disability of the undersigned.

## IX. INFORMATION REGARDING INVESTMENT CONSIDERATIONS

In addition to the other factors that may impact upon an investment in th Company, investors should consider the following important information. THE INFORMATION DOES NOT CONSTITUTE A COMPLETE DESCRIPTION OF ALI OF THE FACTORS THAT MAY IMPACT AN INVESTMENT IN THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS. INVESTORS ARE URGED TO CONDUCT THEIR OWN INVESTIGATION AND TO REQUEST WHATEVER

6



INFORMATION THEY DEEM NECESSARY FROM THE COMPANY TO EVALU
AN INVESTMENT IN THE PROMISSORY NOTES AND THE MEMBER!
INTERESTS.

### Limited Operating History of the Company: Increased Development Costs

The Company is a newly formed limited liability company, but AMB Dataminers, has over 10 years of operational and development experience. The Company will be ent dependent upon the efforts of its key personnel. The Company is at a stage of its develop where it anticipates that increased efforts will be required to develop its customer I Accordingly, operations of the Company are subject to the many risks inherent in expandi business enterprise, including unanticipated expenses. There is no assurance that the Comp will be able to operate on a profitable basis.

### Illiquidity of Investment

There is no public market for the Offered Securities and none is expected to deve The Offered Securities will be subject to restrictions on transfer.

### The Promissory Notes are Unsecured

The Promissory Notes are unsecured obligations of the Company. The Company r issue other notes which either are secured or are entitled to a priority in payment over Promissory Notes.

### Dependence on Key Personnel

The Company's success depends in significant part upon the continued services of its i technical, sales and senior management personnel. Should any of them depart, operations co be adversely affected. The Company's success depends on the Company's ability to attract a retain highly trained technical, sales and management personnel. The Company will need continue to hire additional personnel as its business grows. There are shortages of such person in the current labor market. Shortages of qualified personnel could limit the ability of I Company to increase sales of existing products or services or to launch new products or service

### Risks Associated with Planned Expansion

The Company's business plan calls for the building of a customer base through Reselle Trade Shows, OEM Partners, Consulting Company Partners and Webinars/email marketing. I assurances can be given that this customer base will develop. In addition, the Company's abili to attract customers is dependent on its success in attracting and retaining competent sal personnel and on its ability to establish partnerships. The implementation of the Company marketing plans will increase payroll and other operating costs of the Company. No assuranc can be given that the Company will be able to assimilate the growth required to implement i expanded marketing plan, either from a cost or an operational standpoint.



Development Timing

The Company has aggressive timetables for the marketing of its products. Meeting timetables is a function of continued, uninterrupted funding, as well as the ability to scheduled technological developments on a timely basis. Failure to meet any phase timetable will have the effect of delaying subsequent phase developments as well and could a material adverse effect upon the Company's business, results of operations and fina condition. There can be no assurances that the Company will be able to meet its sche timetables, if at all.

Competition

The market served by the Company is highly competitive and there are few substa barriers to entry. Competition among companies that provide similar services is intense an expected to increase significantly in the future. AMB's current perceived competition woul IBM, Oracle, SAS (DataFlux), Trillium and Informatica.

These companies may have greater name recognition and more established relations within the industry than the Company. Such competitors may be able to undertake extensive marketing campaigns, obtain more attractive servicing models, adopt more aggres pricing policies and devote substantially more resources to competing in the Compa industry.

Because the operations and strategic plans of existing and future competitors undergoing rapid change, it is difficult for the Company to anticipate which companies are lil to offer competitive services in the future. There can be no assurance that the Company wil able to compete successfully against current or future competitors.

Uncertain Acceptance of the Company's Products and Services

The Company's ability to establish and maintain a leadership position in providing products will depend on, among other things: (i) the Company's success in forging partnersh with third-party equipment vendors; (ii) the Company's ability to target and qualify prospects installation; (iii) the Company's marketing and sales efforts; (iv) the Company's ability provide customer support and service; and (v) the Company's ability to develop and maint brand recognition for its providers. The Company operates in a market that is in an early sta of development, is rapidly evolving and is characterized by an increasing number of mark entrants who have introduced or developed competing services. As is typical in the case of new and rapidly evolving industry, demand and market acceptance for recently introduce products and services are subject to a high level of uncertainty and risk. Sales of the Company products may require an extended sales effort in certain cases. Because the market for t Company's services is new and evolving, it is difficult to predict the size of this market and growth rate, if any. If the market fails to develop, develops more slowly than expected becomes saturated with competitors, the Company's business, results of operations and financi condition could be materially adversely affected.



8

The Company may be unable to attract or retain clients

The Company's long-term success depends on its ability to deploy its products Users, Software Vendors and Consulting/Services Companies. The Company cont develop its products and intends to invest significant resources in marketing this prod Company cannot be certain that its marketing efforts will generate additional Competition from the Company's competitors is likely to increase, and may cause son clients to switch to its competitors' products and services.

## The Company's Operating Results may Fluctuate

The Company's operating results may fluctuate significantly in the future as a re variety of factors, many of which are outside the Company's control. Factors that may a Company's operating results include: (i) the amount and timing of capital expenditures ar costs relating to the expansion of the Company's operations; (ii) price competition or changes in licensing of competitive products by other software providers; (iii) te difficulties with respect to the Company's products; (iv) the introduction of new prod services by the Company or its competitors; and (v) general economic conditions and ec conditions specific to the Data Quality/Management industry. Any one of these factors cause the Company's revenues and operating results to vary significantly in the futu addition, as a strategic response to changes in the competitive environment, the Compan from time to time make certain pricing, service or marketing decisions or acquisitions that cause significant declines in the Company's operating results.

## The Company must adapt to technology trends and evolving industry standards

The market for Data Profiling/Quality/Management systems is characterized by technological developments, frequent new product introductions and evolving ind standards. The emerging character of these products and services and their rapid evolution require the Company to effectively use leading technologies, continue to develop technological expertise, enhance its current services and continue to improve the performa features and reliability of its products. There can be no assurance that the Company wil successful in responding quickly, cost effectively and sufficiently to these or other s developments. In addition, the widespread adoption of new technologies or standards co require substantial expenditures by the Company to modify or adapt its services. A failure by Company to rapidly respond to technological developments could have a material adverse eff on the Company's business, results of operations and financial condition.

## There is no Public Market and the Offered Securities are not Marketable or Transferable

There is no public market for any of the Company's securities, including the Promisso Notes and the Membership Interests, and no such market is expected to develop in th foreseeable future. The Membership Interests are subject to restrictions on transfer and may no be transferred or resold except as permitted under the Securities Act and applicable stat securities laws, pursuant to registration or qualification or exemption therefrom. Consequently, investors' ability to liquidate their investment in the Company on a timely basis is severely limited. Investors should be prepared to hold the Offered Securities indefinitely. The Company

9



gives no assurance that it will ever conduct an initial public offering or that a market for its securities will develop or be sustained in the future.

## The Company may issue Additional Securities in the Future

If the Company in the future raises additional funds through the issuance of securities, such equity securities may have rights, preferences or privileges senior to those. Company's Membership Interests. The issuance of additional equity securities may dilu holder's ownership interest in the Company and subject the holder to the rights, preferenc privileges of the new equity securities, which could be senior to those of the ex Membership Interests.

## Management's Ability to Direct Use of Proceeds

The Company intends to use the net proceeds of this Offering for several purp including for general corporate purposes. Accordingly, management of the Company will substantial discretion in applying the net proceeds to be received by the Company. There ca no assurance that the Company will utilize the net proceeds in a manner that enhances mer value. The proceeds of this Offering are not subject to any escrow or minimum proc requirement and may be used by the Company immediately upon receipt.

## The Company's future growth will require significant amounts of additional capital and failur obtain additional capital could significantly impair its ability to implement its business strateg

The expansion and development of the Company's business and the marketing of products will require significant amounts of additional capital to fund debt service and cash f deficits. Although management anticipates that the Company's existing funds and the proceeds of this offering will fund the commencement of its marketing and product developm efforts, the Company will need additional capital. The Company may require additic financing or require financing sooner than anticipated if its development plans change or pr to be inaccurate. If the Company is unable to raise additional funds when needed, it will required to significantly scale back its operations. There can be no assurance that additio capital will be available on acceptable terms, or at all. Any additional debt that the Compa incurs during the next few years to finance its expansion could require the Company to dedic a substantial portion of its future cash flow from operations to the repayment of that de thereby reducing the funds available for other business purposes, limiting the Company's abil to obtain additional financing and placing the Company at a competitive disadvantage compar to competitors who have less debt than the Company. This could have an adverse effect on t Company's business, operating results and financial condition.

The Company relies on a combination of licenses, confidentiality agreements and oth contracts to establish and protect its intellectual property rights. The steps it has taken may inadequate to protect its technology or other intellectual property. Third parties may asse infringement claims against the Company and, in the event of an unfavorable ruling on an claim, the Company may be unable to obtain a license or similar agreement to use intellectu property that it relies upon to conduct its business. In addition, these claims may dive management's attention away from the business and be costly to defend.

10

The Company relies on unpatented trade secrets and know-how to maint;
competitive positions, which it seeks to protect, in part, by confidentiality agreement
employees, consultants and others. However, these agreements may be breached or termi
and the Company may not have adequate remedies for any breach. In addition, the Com;
competitors may otherwise learn or discover its trade secrets. The Company currently I
patents or patent applications pending.

Private Offering; Lack of Agency Review

Since the Offering is a non-public offering, and, as such, is not registered under fede
state securities laws, prospective investors will not have the benefit of review by the Secu
and Exchange Commission or any state securities commission.

Indemnification of Officers and Directors

The Company intends to indemnify its managers and members to the fullest c
permissible under the law. Under most circumstances, the Company's managers and mem
may not be held liable to the Company or its members for errors in judgment or other ac
omissions in the conduct of the Company's business unless such errors in judgment, act
omissions constitute fraud, gross negligence or malfeasance.

## X.   WIRE TRANSFER INSTRUCTIONS

The following are the wire transfer instructions of [_ ___ ___ ___ ___ _]
the Company's Account:

> [Name]
> [Address]
> [ABA Number]
> [Account No.]

## XI.   MISCELLANEOUS

The undersigned hereby intends that the undersigned's signature hereon shall constitute
subscription to the Company for the Promissory Note specified on the signature page of tl
Subscription Agreement.

This Subscription Agreement, and the representations, warranties and agreemen
contained herein shall be binding upon the heirs, executors, administrators and other successo
of the undersigned. If there is more than one signatory hereto, the representations, warrantic
and agreements of the undersigned are made jointly and severally. This Subscription Agreemer
shall be governed by and construed in accordance with the laws of the State of Illinois.

The undersigned understands that this Subscription Agreement is not binding upon th
Company until accepted in writing by an authorized representative of the Company. Th
undersigned also understands that the subscription funds will not otherwise be returned to the
undersigned if this subscription is accepted.

11

The undersigned agrees not to transfer or assign this Agreement, or any o undersigned's interest herein.

The Subscription Documents constitute the entire agreement among the parties h with respect to the subject matter hereof and may be amended only by a written execution parties.



## AMB NEW GENERATION DATA EMPOWERMENT, LLC
### SUBSCRIPTION AGREEMENT COUNTERPART SIGNATURE PAGE FOR CORPORATE/PARTNERSHIP/LIMITED LIABILITY COMPANY/TRUST INVESTORS OR OTHER INSTITUTIONAL INVESTORS

The undersigned hereby subscribes for the principal amounts of Promissory Note forth below, and agrees to be bound by the terms of the Subscription Agreement an Purchaser Questionnaire of which this Agreement is a part.

PLEASE NOTE THAT ONE OR MORE BRACKETS ON PAGES 3 AND 4 MUST INITIALED IN ORDER FOR THIS SUBSCRIPTION TO BE CONSIDERED. SUBSCRIBER MUST INITIAL ONE OR MORE OF (c), (d), (e) or (g) TO QUALIFY AS ACCREDITED INVESTOR.

EXECUTED this _____ day of _____ 2008, at _____

Principal amount of Promissory Note: $ _____

**Entity Name: (please print or type)**

_____

By: _____

   Its: _____

---

## ACCEPTANCE

Accepted this _____ day of _____ 2008 at Chicago, Illinois.

**AMB NEW GENERATION DATA EMPOWERMENT, LLC,**
**an Illinois limited liability company**

By: _____
Title: _____

14

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTERESTS ARE TO BE HELD IN CORPORATE NAME]

## CORPORATE CERTIFICATE

CERTIFICATE OF _____

(Name of Corporation)

The undersigned, being the (Assistant) Secretary and keeper of the minutes o _____ a _____ (state) corporation (the "Corporation"), hereby certifies that the following is a true and complete copy of resolutions duly adopted by the Board of Directors o the Corporation which are in full force and effect and have not been superseded or amended.

WHEREAS, the Corporation has decided that it is in its best interest to make an investment in the Promissory Notes issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** (the "Company").

NOW, THEREFORE, BE IT:

RESOLVED, that the Corporation hereby is authorized and directed to make an investment in Promissory Notes and Membership Interests issued by the Company of the type and to the extent set forth in that certain Subscription Agreement (the "Subscription Agreement") of the Company.

FURTHER RESOLVED, that the President or any Vice President of the Corporation, acting alone, is hereby authorized and directed on behalf of the Corporation to execute and to deliver the Subscription Agreement and Purchaser Questionnaire and all other necessary and appropriate documents, including evidences of indebtedness and the pledging of security therefor, as may be required under the terms and conditions of the Subscription Agreement, the governing documents of the Company or otherwise, including any amendments to any of the foregoing and to take such other necessary and appropriate action, in his or her sole discretion and without further resolution of this Board of Directors to consummate the purchase of the Promissory Notes and Membership Interests issued by the Company and to effectuate the terms and intent of these resolutions.

IN WITNESS WHEREOF, I have executed this certificate as the (Assistant) Secretary of the Corporation this ____ day of _____, 2008, and declare that it is truthful and correct.

By: _____

(Assistant) Secretary

16

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP
INTEREST ARE TO BE HELD IN GENERAL PARTNERSHIP NAME]

## GENERAL PARTNERSHIP CERTIFICATE

CERTIFICATE OF _____ (the "Partnership")

(Name of Partnership)

The undersigned, constituting all requisite signatories of the Partnership, a(n)
_____ (state) general partnership, hereby certify as follows:

1.    That the Partnership commenced business on _____, _____ and was
established pursuant to a partnership agreement dated _____, _____ (the
"Agreement").

2.    That a true and correct copy of the Agreement is attached hereto and that, as of
the date hereof, the Agreement has not been amended (except as to any attached amendments) or
revoked and is still in full force and effect.

3.    That the requisite partners of the Partnership have determined that an investment
in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA
EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription
Agreement is of benefit to the Partnership and has determined to make such investment on behalf
of the Partnership and has full power and authority to do so and thereby bind the Partnership.

IN WITNESS WHEREOF, we have executed this certificate as the requisite partners of
the Partnership this _____ day of _____, 2008, and declare that it is truthful and
correct.

By: _____

Partner

By: _____

Partner

By: _____

Partner

17

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP
INTEREST ARE TO BE HELD IN LIMITED PARTNERSHIP NAME]

## LIMITED PARTNERSHIP CERTIFICATE

CERTIFICATE OF _____RHHFCO  Select_____ (the "Partnership")
(Name of Partnership)

The undersigned, constituting all requisite signatories of the Partnership, _Delaware_ (state) limited partnership, hereby certify as follows:

1. That the Partnership commenced business on _8/7_ __ 2005 and established pursuant to a partnership agreement dated __8/7__ , 2005 ("Agreement").

2. That a true and correct copy of the Agreement is attached hereto and that, the date hereof, the Agreement has not been amended (except as to any attached amendment revoked and is still in full force and effect.

3. That the requisite partners of the Partnership have determined that an investe in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DA EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscrip Agreement is of benefit to the Partnership and has determined to make such investment on be of the Partnership and has full power and authority to do so and thereby bind the Partnership.

IN WITNESS WHEREOF, we have executed this certificate as the requisite partners the Partnership this _15_ day of _May_ , 2008, and declare that it is truthful correct.

_____Rahfco Select_____
Limited Partnership

By: _____
Its: General Partner

18

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTERESTS ARE TO BE HELD IN CORPORATE NAME]

## LIMITED LIABILITY COMPANY CERTIFICATE

CERTIFICATE OF _____

(Name of Limited Liability Company)

The undersigned, constituting all requisite signatories of _____ a(n) _____ (state) limited liability company (the "Company"), hereby certifies as follows:

1.    That the Company commenced business on _____, ____ and was established pursuant to an operating agreement dated _____, _____ (the "Agreement").

2.    That a true and correct copy of the Agreement is attached hereto and that, as of the date hereof, the Agreement has not been amended (except as to any attached amendments) or revoked and is still in full force and effect.

3.    That the requisite partners of the Company have determined that an investment in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription Agreement is of benefit to the Company and has determined to make such investment on behalf of the Company and has full power and authority to do so and thereby bind the Company.

IN WITNESS WHEREOF, we have executed this certificate as the requisite members of the Company this ___ day of _____, 2008, and declare that it is truthful and correct.

By: _____

Member

By: _____

Member

By: _____

Member

19

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTERESTS ARE TO BE HELD IN NAME OF TRUST]

## TRUST CERTIFICATE

CERTIFICATE OF _____

(Name of Trust)

The undersigned, constituting all requisite signatories of that certain Trust Agreement (hereinafter referred to as the "Agreement") of _____ (the "Trust"), hereby certify a follows:

1.    That the Trust was established pursuant to the Agreement dated _____
____.

2.    That a true and correct copy of the Agreement is attached hereto and that, as of the date hereof, the Agreement has not been amended (except as to any attached amendments) or revoked and is still in full force and effect.

3.    That the requisite trustees of the Trust have determined that an investment in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription Agreement is of benefit to the Trust and has determined to make such investment on behalf of the Trust and has full power and authority to do so and thereby bind the Trust.

IN WITNESS WHEREOF, we have executed this certificate as the requisite Trustee(s) of the Trust this ___ day of _____, 2008, and declare that it is truthful and correct.

By: _____

Trustee

By: _____

Trustee

By:

Trustee

1030760_1

20

# EXHIBIT D

**Investor Name: RAHFCO Select**

**$200,000.00 Principal Amount Promissory Notes**
**without Interest**
**and Membership Interests in AMB New Generation Data Empowerment, LLC**

to be issued by

**AMB NEW GENERATION DATA EMPOWERMENT, LLC**
**an Illinois limited liability company**

September 1, 2008

## SUBSCRIPTION DOCUMENTS

## GENERAL INFORMATION

The information contained herein is being furnished by the undersigned investor to enable AMB New Generation Data Empowerment, LLC, an Illinois limited liability company (the "Company") to determine whether, under Sections 3(b) and/or 4(2) of the Securities Act of 1933, as amended, (the "Securities Act"), and Regulation D ("Regulation D") promulgated thereunder, the undersigned investor meets the qualification and suitability requirements for an investment in promissory notes of the Company (the "Promissory Notes"). The Promissory Notes shall be issued in denominations of $200,000.00 each (a "Promissory Note Unit"). The principal balance of the Promissory Note shall be due and payable in full, one year after the date of issuance. No interest shall accrue or be paid on the Promissory Notes. In lieu of interest, each Promissory Note Unit shall entitle the holder thereof to receive 28 limited liability company membership interests in the Company (the "Membership Interests"). If the offering is fully subscribed, the Membership Interests would constitute 2.8% of all of the issued and outstanding membership interests in the Company as of the date hereof.

The undersigned investor understands that: (i) the Company will rely upon the information contained herein for making the determination whether the investor meets the qualification and suitability requirements described herein; (ii) neither the Promissory Notes nor the Membership Interests (collectively, the "Offered Securities"), will be registered under the Securities Act in reliance upon the exemption from registration provided by Sections 3(b) and/or 4(2) of the Securities Act and Regulation D; and (iii) the purchase of the Offered Securities will be solely for the account of the undersigned investor and not for the account of any other person or with a view toward resale, assignment, fractionalization or distribution thereof.

The undersigned investor must represent to the Company that he or she has adequate means of providing for current needs and possible personal contingencies and has no need for liquidity of this investment.

Please contact Steven Meister, the Manager of the Company, at (847) 791-7838 (with any questions you may have concerning an investment in the Offered Securities.

## SUBSCRIPTION INSTRUCTIONS

AFTER YOU HAVE HAD AN OPPORTUNITY TO OBTAIN ALL THE INFORMATION YOU REQUIRE CONCERNING THE COMPANY AND THIS OFFERING AND HAVE DECIDED TO SUBSCRIBE FOR AND PURCHASE THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS YOU MUST COMPLETE THE PURCHASER QUESTIONNAIRE AND SUBSCRIPTION AGREEMENT (THE "SUBSCRIPTION DOCUMENTS") AND VERIFY THAT YOU ARE AN "ACCREDITED INVESTOR." PLEASE READ THE FOLLOWING INSTRUCTIONS TO ASCERTAIN HOW TO COMPLETE THE SUBSCRIPTION DOCUMENTS WHICH MUST BE COMPLETED BY EACH SUBSCRIBER:

1.    Natural Persons.

i

- Verify that you are an accredited investor by checking the appropriate box in Section V of the Subscription Agreement.

- Execute the Subscription Documents on the signature line near the top of Page 13.

If the investment is being made by joint or co-tenants then:

- Each joint or co-tenant must complete the Purchaser Questionnaire included herein.

- Each joint or co-tenant must execute the Subscription Documents on the signature line near the top of Page 13.

2. Entities.

- Verify that the entity is an "accredited investor" by checking the appropriate box in Section V of the Subscription Agreement.

- The authorized officer of the entity must execute the Subscription Agreement, print the entity's name above his or her signature and indicate his or her title on the signature line near the top of Page 14 or 15.

- The authorized officer must also complete the applicable entity level certificate contained on Pages 16-20 of the Subscription Agreement and attach a copy of the entity's governing documents.

- The authorized officer of the entity must also attach a copy of the resolutions supporting the relevant certificate.

ii

AMB NEW GENERATION DATA EMPOWERMENT, LLC
PURCHASER QUESTIONNAIRE
(provide all applicable information)

TO BE COMPLETED BY ALL SUBSCRIBERS

(Please print or type)

Principal Amount of Promissory Notes: _____ _____

Purchaser Information:

Name of Individual or Entity: _____ _____

Federal Tax ID or Social Security Number: _____ _____

Marital Status (Natural Persons): _____    Date of Birth: _____

Citizen of or State of Organization: _____    _____

Principal Address: _____ _____
(street)

_____    _____    _____
(city)    (state)    (zip)

Telephone Number: _____

Mailing Address: _____ _____
(if different)    (street)

_____    _____    _____
(city)    (state)    (zip)

Co-Purchaser Information:

Name of Individual or Entity: _____

Federal Tax ID or Social Security Number: _____

Marital Status (Natural Persons): _____    Date of Birth: _____

Citizen of or State of Organization: _____

Principal Address: _____ _____
(street)

_____    _____    _____
(city)    (state)    (zip)

1

Telephone Number: _____

Mailing Address: _____
(if different)                                    (street)

_____
(city)                    (state)                    (zip)

Indicate Type of Ownership:

_____ Individual                    _____ Keogh Plan

_____ Tenants by the Entireties*    _____ Trust

_____ Joint tenants with Rights of  _____ Partnership
        Survivorship*

_____ Community Property*           _____ Limited Liability Company

_____ Tenants in Common*            _____ Corporation

_____ Individual Retirement Account (IRA)*  _____ Uniform Gift to Minors Act
        (signature of Custodian also required)         State:
                                                       Custodian's Name:
_____ Pension Plan                                   Minor's Name:

*Two or more signatures required

2

AMB NEW GENERATION DATA EMPOWERMENT, LLC

SUBSCRIPTION AGREEMENT

AMB New Generation Data Empowerment, LLC
Attention: Steven Meister
11 Knight Hill Court
Buffalo Grove, Illinois 60089

## I.    SUBSCRIPTION

Subject to the terms and conditions contained herein, the undersigned hereby offers and agrees to purchase the principal amount of promissory notes (the "Promissory Note"), shown on the signature page hereof to be issued by AMB New Generation Data Empowerment, LLC (the "Company"), without interest. The Promissory Note shall be issued in the amount of $200,000.00 (a "Promissory Note Unit"). The principal balance of the Promissory Note shall be due and payable in full one year after the date of issuance. No interest shall accrue or be paid on the Promissory Note. In lieu of interest, the Promissory Note Unit shall entitle the holder thereof to receive 28 limited liability company membership interests in the Company (the "Membership Interests"). If this offering is fully subscribed, the Membership Interests would constitute 2.8% of the issued and outstanding membership interests in the Company as of the date hereof. The Promissory Note and the Membership Interests are hereinafter collectively referred as the "Offered Securities." The offer of the Offered Securities is hereinafter referred to as the "Offering." The undersigned has submitted a check/money order or has wired the necessary monies to "AMB New Generation Data Empowerment, LLC." In the case of wire transfers, the undersigned has provided evidence to enable the Company to verify receipt.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. SOME OF WHICH ARE DESCRIBED IN THE SECTION HEADED "SPECIAL INFORMATION REGARDING INVESTMENT CONSIDERATIONS." THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT OR OF ANY OTHER INFORMATION PROVIDED TO SUBSCRIBERS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFER AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT IN COMPLIANCE WITH THE SECURITIES ACT OF 1933, AS AMENDED, AND APPLICABLE STATE SECURITIES LAWS, OR EXEMPTIONS THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## II.    TERMS OF THE OFFERING; DESCRIPTION OF THE BUSINESS

The Company is a newly formed Illinois limited liability company which was formed in connection with the contribution by AMB Dataminers, Inc., an Illinois corporation ("AMB") of substantially all of its assets and properties to the Company in exchange for Company Membership Interests. The Company is offering up to $200,000.00 in principal amount of Promissory Notes. Each $200,000 Promissory Note Unit shall entitle the subscriber to receive 28 limited liability company membership interests in the Company. It is anticipated that the entire offering shall be purchased by a single investor. The Company reserves the right to reject any subscription, in whole or in part, for any reason in its sole discretion.

## III.    OFFERING AND SALE OF NOTES

The offering price of the Promissory Notes has been determined unilaterally by the Company and is not the result of arm's-length negotiations. The offering of the Promissory Notes (the "Offering") is being made on a best-efforts basis, $200,000.00 maximum (the "Maximum Offering Amount"). The Promissory Notes will be issued upon acceptance of a subscription by the Company. The Company will continue the Offering until the earliest to occur of (i) October 30, 2008, (ii) sale of the Maximum Offering Amount or (iii) such other date as the Company may determine, in its sole discretion. The Company may reject any subscription, in whole or in part, in its sole and absolute discretion.

## IV.    OFFERING MATERIALS

The undersigned hereby acknowledges receipt of the following offering materials for the Promissory Notes:

1.    Company Business Plan dated March 10, 2008;

2.    Form Promissory Note;

3.    Operating Agreement;

4.    Subscription Agreement; and

5.    Purchaser Questionnaire.

In addition, the undersigned acknowledges having been presented with an opportunity to review copies of any additional information concerning the Company, which the Company has in its possession. All of the above referenced materials are collectively referred to as the "Offering Documents."

## V.    ACCREDITATION

The undersigned understands that the Offered Securities are not being registered under the Securities Act of 1933, as amended (the "Securities Act"), or the securities acts of any state (the "Laws") and are being offered and sold in reliance upon exemptions from registration under the Securities Act and the Laws. To enable the Company to offer and sell the Offered Securities



in reliance on these exemptions, each investor must be an "accredited investor" and further represents that he or she has a net worth (including home, home furnishings and automobiles) of at least $1,000,000. The undersigned has initialed as many of (a) through (g) below which are applicable.

An "Accredited Investor" means any person who comes within any of the following categories, or who the Company reasonably believes comes within any of the following categories, at the time of sale of Offered Securities to that person:

[   ]   a.      A natural person whose individual net worth, or joint net worth with the undersigned's spouse, at the time of purchase, exceeds $1,000,000 (net worth, for purposes of the Offering, unless otherwise noted includes home, home furnishings and automobiles. For Illinois investors, such net worth may not include home, home furnishings and automobiles).

[   ]   b.      A natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years, and has a reasonable expectation of reaching the same income level in the current year.

[   ]   c.      Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership not formed for the specific purpose of acquiring the Promissory Notes offered with assets in excess of $5,000,000.

[   ]   d.      Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors.

[   ]   e.      Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940.

[   ]   f.      Any director or executive officer of the Company.

[   ]   g.      Any entity in which all of the equity owners are accredited investors.

**PLEASE INITIAL THE STATEMENT(S) ABOVE WHICH ARE TRUE AS TO YOU OR THE ENTITY IN THE BRACKETS TO THE LEFT THEREOF. ONE**

3

**OR MORE STATEMENTS MUST BE INITIALED BY THOSE WISHING TO INVEST. IF NO INITIALS ARE PROVIDED BELOW, THIS DOCUMENT CANNOT BE ACCEPTED FOR SUBSCRIPTION. IF THE PROMISSORY NOTES ARE BEING PURCHASED ON BEHALF OF AN INDIVIDUAL RETIREMENT ACCOUNT ("IRA"), KEOGH PLAN OR SIMILAR FIDUCIARY ACCOUNT, THE REPRESENTATIONS BELOW SHOULD BE MADE ON BEHALF OF THE BENEFICIARY OR DONOR WHO DIRECTLY OR INDIRECTLY SUPPLIES THE FUNDS FOR INVESTMENT.**

VI.   REPRESENTATIONS AND WARRANTIES

The undersigned hereby represents, warrants and understands that:

(1)   if any of the information contained in the Subscription Documents is or becomes incorrect with respect to the undersigned, the undersigned will promptly notify the Company;

(2)   the undersigned is an "accredited investor" as defined in Section V above and has a net worth of at least $1,000,000;

(3)   the Offered Securities subscribed for herein will be purchased solely by and for the account of the undersigned for investment, and are not being purchased for subdivision, fractionalization, resale or distribution: the undersigned has no contract, undertaking, agreement or arrangement with any person to sell, transfer or pledge all or any part of the Offered Securities for which the undersigned hereby subscribes, and the undersigned has no plan or intent to enter into any such contract, undertaking or arrangement;

(4)   the Company will have no obligation to recognize the ownership, beneficial or otherwise, of the Offered Securities by anyone but the undersigned;

(5)   the Offered Securities have not and will not be registered under the Securities Act or the securities laws of any state (the "Laws"), and must be held indefinitely unless they are subsequently registered under the Securities Act and the Laws, or exemptions from such registration are available and the undersigned may not transfer the Offered Securities, or any interest therein, unless and until the Company shall have consented thereto (which consent may be withheld in the absolute discretion of management of the Company), provided further that the undersigned shall provide, if the Company so requires, an opinion of counsel satisfactory to the Company, that the intended disposition will not violate the Securities Act or the Laws or the rules and regulations of the Securities and Exchange Commission or of any state securities commission promulgated thereunder;

(6)   the Company does not have any obligation or intention to register the Offered Securities under any federal or state securities act or law, or to file the reports to make public the information required by Rule 144 under the Securities Act;

4



(7)   the undersigned must generally hold the Offered Securities for a minimum period of one year and may not sell, transfer, pledge or otherwise dispose of the Offered Securities except in compliance with the Securities Act and the Laws or exemptions therefrom;

(8)   the undersigned alone or with his or her Purchaser Representative (if applicable), has knowledge and experience in financial and business matters, in general and in investments in corporations in particular;

(9)   the undersigned has participated in other privately placed investments and/or he or she has the capacity to protect his or her own interest in investments like the subject investment and that he or she is capable of evaluating the merits, risks and other facets of the subject investment;

(10)  the undersigned's financial condition is such that he or she has no need for liquidity with respect to an investment in the Offered Securities;

(11)  the undersigned is able to bear the economic risk of the investment in the Offered Securities for an indefinite period of time, including the risk of losing all of his or her investment, and the loss of his or her entire investment in the Offered Securities would not materially adversely affect the standard of living of the undersigned and his or her family;

(12)  the undersigned has either secured independent tax advice with respect to an investment in the Offered Securities, upon which he or she, alone or with his or her Purchaser Representative (if applicable), is relying, or he or she is sufficiently familiar with the income taxation of corporations that he or she deemed such independent advice to be unnecessary;

(13)  the undersigned, either alone or with the assistance of his or her purchaser representative (as that term is defined under Rule 501(h) of Regulation D), if any, has had an opportunity to ask questions of and receive answers from duly designated representatives of the Company concerning the terms and conditions of the Offering and the Company generally and has been afforded an opportunity to examine those documents and other information which the undersigned or his or her representative, if any, has requested for the purpose of evaluating an investment in the Offered Securities and for the purpose of answering any questions the undersigned or his or her representative, if any, may have concerning the business and affairs of the Company;

(14)  in evaluating the suitability of an investment by the undersigned in the Company, the undersigned has relied solely upon the materials made available to the undersigned at the undersigned's request and independent investigations made by the undersigned in making the decision to purchase the Promissory Notes subscribed for herein, and acknowledges that no representations or warranties (oral or written), have been made to the undersigned with respect thereto;

5



(15)  the undersigned was not induced to invest by any form of general solicitation or general advertising including, but not limited to: (a) any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over the television or radio; (b) any seminar or meeting whose attendees had been invited by any general solicitation or general advertising;

(16)  the undersigned is aware of the fact that (a) the Company is a development stage company with a limited operating history and (b) investment in the Offered Securities is very speculative and involves a high degree of risk of loss of the entire investment;

(17)  no federal or state agency has reviewed or passed upon the adequacy of the offering, made any finding or determination as to the fairness for investment, or any recommendation or endorsement of the Offered Securities as an investment;

(18)  all information provided by the undersigned is true and accurate as of the date set forth on the subscription page hereof, and if there should be any change in such information prior to the acceptance of his or her subscription for the Promissory Notes that he or she is purchasing, the undersigned will immediately provide such information to the Company.

## VII.  INDEMNIFICATION

The undersigned hereby agrees to indemnify each of the Company and its members, managers, officers, employees and agents and to hold each of them harmless against any and all loss, damage, liability or expense, including reasonable attorneys' fees, which they or any of them may suffer, sustain or incur by reason of or in connection with any misrepresentation or breach of warranty or agreement made by the undersigned.

## VIII.  ACCEPTANCE AND REVOCATION

The undersigned understands and agrees that this subscription may be accepted or rejected by the Company, in whole or in part, in its sole and absolute discretion, and if accepted, the Promissory Notes purchased pursuant hereto will be issued only in the name of the undersigned. The undersigned hereby acknowledges and agrees that the undersigned may not cancel, revoke or withdraw this Subscription Agreement, and that this Subscription Agreement and the documents submitted herewith shall survive (a) changes in the transactions, documents and instruments provided to or explained to the undersigned that are not material and (b) the death or disability of the undersigned.

## IX.  INFORMATION REGARDING INVESTMENT CONSIDERATIONS

In addition to the other factors that may impact upon an investment in the Company, investors should consider the following important information.  **THIS INFORMATION DOES NOT CONSTITUTE A COMPLETE DESCRIPTION OF ALL OF THE FACTORS THAT MAY IMPACT AN INVESTMENT IN THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS. INVESTORS ARE URGED TO CONDUCT THEIR OWN INVESTIGATION AND TO REQUEST WHATEVER**

6

INFORMATION THEY DEEM NECESSARY FROM THE COMPANY TO EVALUATE AN INVESTMENT IN THE PROMISSORY NOTES AND THE MEMBERSHIP INTERESTS.

Limited Operating History of the Company; Increased Development Costs

The Company is a newly formed limited liability company, but AMB Dataminers, Inc. has over 10 years of operational and development experience. The Company will be entirely dependent upon the efforts of its key personnel. The Company is at a stage of its development where it anticipates that increased efforts will be required to develop its customer base. Accordingly, operations of the Company are subject to the many risks inherent in expanding a business enterprise, including unanticipated expenses. There is no assurance that the Company will be able to operate on a profitable basis.

Illiquidity of Investment

There is no public market for the Offered Securities and none is expected to develop. The Offered Securities will be subject to restrictions on transfer.

The Promissory Notes are Unsecured

The Promissory Notes are unsecured obligations of the Company. The Company may issue other notes which either are secured or are entitled to a priority in payment over the Promissory Notes.

Dependence on Key Personnel

The Company's success depends in significant part upon the continued services of its key technical, sales and senior management personnel. Should any of them depart, operations could be adversely affected. The Company's success depends on the Company's ability to attract and retain highly trained technical, sales and management personnel. The Company will need to continue to hire additional personnel as its business grows. There are shortages of such personnel in the current labor market. Shortages of qualified personnel could limit the ability of the Company to increase sales of existing products or services or to launch new products or services.

Risks Associated with Planned Expansion

The Company's business plan calls for the building of a customer base through Resellers, Trade Shows, OEM Partners, Consulting Company Partners and Webinars/email marketing. No assurances can be given that this customer base will develop. In addition, the Company's ability to attract customers is dependent on its success in attracting and retaining competent sales personnel and on its ability to establish partnerships. The implementation of the Company's marketing plans will increase payroll and other operating costs of the Company. No assurances can be given that the Company will be able to assimilate the growth required to implement its expanded marketing plan, either from a cost or an operational standpoint.

7



Development Timing

The Company has aggressive timetables for the marketing of its products. Meeting of its timetables is a function of continued, uninterrupted funding, as well as the ability to meet scheduled technological developments on a timely basis. Failure to meet any phase of a timetable will have the effect of delaying subsequent phase developments as well and could have a material adverse effect upon the Company's business, results of operations and financial condition. There can be no assurances that the Company will be able to meet its scheduled timetables, if at all.

Competition

The market served by the Company is highly competitive and there are few substantial barriers to entry. Competition among companies that provide similar services is intense and is expected to increase significantly in the future. AMB's current perceived competition would be IBM, Oracle, SAS (DataFlux), Trillium and Informatica.

These companies may have greater name recognition and more established relationships within the industry than the Company. Such competitors may be able to undertake more extensive marketing campaigns, obtain more attractive servicing models, adopt more aggressive pricing policies and devote substantially more resources to competing in the Company's industry.

Because the operations and strategic plans of existing and future competitors are undergoing rapid change, it is difficult for the Company to anticipate which companies are likely to offer competitive services in the future. There can be no assurance that the Company will be able to compete successfully against current or future competitors.

Uncertain Acceptance of the Company's Products and Services

The Company's ability to establish and maintain a leadership position in providing its products will depend on, among other things: (i) the Company's success in forging partnerships with third-party equipment vendors; (ii) the Company's ability to target and qualify prospects for installation; (iii) the Company's marketing and sales efforts; (iv) the Company's ability to provide customer support and service; and (v) the Company's ability to develop and maintain brand recognition for its providers. The Company operates in a market that is in an early stage of development, is rapidly evolving and is characterized by an increasing number of market entrants who have introduced or developed competing services. As is typical in the case of a new and rapidly evolving industry, demand and market acceptance for recently introduced products and services are subject to a high level of uncertainty and risk. Sales of the Company's products may require an extended sales effort in certain cases. Because the market for the Company's services is new and evolving, it is difficult to predict the size of this market and its growth rate, if any. If the market fails to develop, develops more slowly than expected or becomes saturated with competitors, the Company's business, results of operations and financial condition could be materially adversely affected.

8



The Company may be unable to attract or retain clients

The Company's long-term success depends on its ability to deploy its products to End-Users, Software Vendors and Consulting/Services Companies. The Company continues to develop its products and intends to invest significant resources in marketing this product. The Company cannot be certain that its marketing efforts will generate additional clients. Competition from the Company's competitors is likely to increase, and may cause some of its clients to switch to its competitors' products and services.

The Company's Operating Results may Fluctuate

The Company's operating results may fluctuate significantly in the future as a result of a variety of factors, many of which are outside the Company's control. Factors that may affect the Company's operating results include: (i) the amount and timing of capital expenditures and other costs relating to the expansion of the Company's operations; (ii) price competition or pricing changes in licensing of competitive products by other software providers; (iii) technical difficulties with respect to the Company's products; (iv) the introduction of new products or services by the Company or its competitors; and (v) general economic conditions and economic conditions specific to the Data Quality/Management industry. Any one of these factors could cause the Company's revenues and operating results to vary significantly in the future. In addition, as a strategic response to changes in the competitive environment, the Company may from time to time make certain pricing, service or marketing decisions or acquisitions that could cause significant declines in the Company's operating results.

The Company must adapt to technology trends and evolving industry standards

The market for Data Profiling/Quality/Management systems is characterized by rapid technological developments, frequent new product introductions and evolving industry standards. The emerging character of these products and services and their rapid evolution will require the Company to effectively use leading technologies, continue to develop its technological expertise, enhance its current services and continue to improve the performance, features and reliability of its products. There can be no assurance that the Company will be successful in responding quickly, cost effectively and sufficiently to these or other such developments. In addition, the widespread adoption of new technologies or standards could require substantial expenditures by the Company to modify or adapt its services. A failure by the Company to rapidly respond to technological developments could have a material adverse effect on the Company's business, results of operations and financial condition.

There is no Public Market and the Offered Securities are not Marketable or Transferable

There is no public market for any of the Company's securities, including the Promissory Notes and the Membership Interests, and no such market is expected to develop in the foreseeable future. The Membership Interests are subject to restrictions on transfer and may not be transferred or resold except as permitted under the Securities Act and applicable state securities laws, pursuant to registration or qualification or exemption therefrom. Consequently, investors' ability to liquidate their investment in the Company on a timely basis is severely limited. Investors should be prepared to hold the Offered Securities indefinitely. The Company

9



gives no assurance that it will ever conduct an initial public offering or that a market for any of its securities will develop or be sustained in the future.

## The Company may issue Additional Securities in the Future

If the Company in the future raises additional funds through the issuance of equity securities, such equity securities may have rights, preferences or privileges senior to those of the Company's Membership Interests. The issuance of additional equity securities may dilute the holder's ownership interest in the Company and subject the holder to the rights, preferences or privileges of the new equity securities, which could be senior to those of the existing Membership Interests.

## Management's Ability to Direct Use of Proceeds

The Company intends to use the net proceeds of this Offering for several purposes, including for general corporate purposes. Accordingly, management of the Company will have substantial discretion in applying the net proceeds to be received by the Company. There can be no assurance that the Company will utilize the net proceeds in a manner that enhances member value. The proceeds of this Offering are not subject to any escrow or minimum proceeds requirement and may be used by the Company immediately upon receipt.

## The Company's future growth will require significant amounts of additional capital and failure to obtain additional capital could significantly impair its ability to implement its business strategy

The expansion and development of the Company's business and the marketing of its products will require significant amounts of additional capital to fund debt service and cash flow deficits. Although management anticipates that the Company's existing funds and the net proceeds of this offering will fund the commencement of its marketing and product development efforts, the Company will need additional capital. The Company may require additional financing or require financing sooner than anticipated if its development plans change or prove to be inaccurate. If the Company is unable to raise additional funds when needed, it will be required to significantly scale back its operations. There can be no assurance that additional capital will be available on acceptable terms, or at all. Any additional debt that the Company incurs during the next few years to finance its expansion could require the Company to dedicate a substantial portion of its future cash flow from operations to the repayment of that debt, thereby reducing the funds available for other business purposes, limiting the Company's ability to obtain additional financing and placing the Company at a competitive disadvantage compared to competitors who have less debt than the Company. This could have an adverse effect on the Company's business, operating results and financial condition.

The Company relies on a combination of licenses, confidentiality agreements and other contracts to establish and protect its intellectual property rights. The steps it has taken may be inadequate to protect its technology or other intellectual property. Third parties may assert infringement claims against the Company and, in the event of an unfavorable ruling on any claim, the Company may be unable to obtain a license or similar agreement to use intellectual property that it relies upon to conduct its business. In addition, these claims may divert management's attention away from the business and be costly to defend.

10



The Company relies on unpatented trade secrets and know-how to maintain its competitive positions, which it seeks to protect, in part, by confidentiality agreements with employees, consultants and others. However, these agreements may be breached or terminated, and the Company may not have adequate remedies for any breach. In addition, the Company's competitors may otherwise learn or discover its trade secrets. The Company currently has no patents or patent applications pending.

### Private Offering; Lack of Agency Review

Since the Offering is a non-public offering, and, as such, is not registered under federal or state securities laws, prospective investors will not have the benefit of review by the Securities and Exchange Commission or any state securities commission.

### Indemnification of Officers and Directors

The Company intends to indemnify its managers and members to the fullest extent permissible under the law. Under most circumstances, the Company's managers and members may not be held liable to the Company or its members for errors in judgment or other acts or omissions in the conduct of the Company's business unless such errors in judgment, acts or omissions constitute fraud, gross negligence or malfeasance.

## X.  WIRE TRANSFER INSTRUCTIONS

The following are the wire transfer instructions of [ _____ ] for the Company's Account:

> [Name]
> [Address]
> [ABA Number]
> [Account No.]

## XI.  MISCELLANEOUS

The undersigned hereby intends that the undersigned's signature hereon shall constitute a subscription to the Company for the Promissory Note specified on the signature page of this Subscription Agreement.

This Subscription Agreement, and the representations, warranties and agreements contained herein shall be binding upon the heirs, executors, administrators and other successors of the undersigned. If there is more than one signatory hereto, the representations, warranties and agreements of the undersigned are made jointly and severally. This Subscription Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

The undersigned understands that this Subscription Agreement is not binding upon the Company until accepted in writing by an authorized representative of the Company. The undersigned also understands that the subscription funds will not otherwise be returned to the undersigned if this subscription is accepted.

11



The undersigned agrees not to transfer or assign this Agreement, or any of the undersigned's interest herein.

The Subscription Documents constitute the entire agreement among the parties hereto with respect to the subject matter hereof and may be amended only by a written execution of all parties.

12



## AMB NEW GENERATION DATA EMPOWERMENT, LLC
### SUBSCRIPTION AGREEMENT – INDIVIDUALS
### COUNTERPART SIGNATURE PAGE

The undersigned hereby subscribes for the principal amount of Promissory Notes set forth below, and agrees to be bound by the terms of the Subscription Agreement and the Purchaser Questionnaire of which this Agreement is a part.

PLEASE NOTE THAT ONE OR MORE BRACKETS ON PAGES 3 AND 4 MUST BE INITIALED IN ORDER FOR THIS SUBSCRIPTION TO BE CONSIDERED. EACH NATURAL PERSON MUST INITIAL (a), (b) OR (f) TO QUALIFY AS AN ACCREDITED INVESTOR.

EXECUTED this _5th_ day of _Sept_ 2008, at _Sioux Falls, SD_.

Principal amount of Promissory Note: $ _200,000_

_Rabfco Self_
_R. Hansen_
(Signature of Subscriber)

_Rahfco Self_
_Randy Hansen_
(Printed Name of Subscriber)

(Signature of Co-Subscriber)

(Printed Name of Co-Subscriber)

---

### ACCEPTANCE

Accepted this _5th_ day of _September_ 2008 at Chicago, Illinois.

AMB NEW GENERATION DATA
EMPOWERMENT, LLC,
an Illinois limited liability company

By: _____
Title: _Managing Partner_

13

## AMB NEW GENERATION DATA EMPOWERMENT, LLC
### SUBSCRIPTION AGREEMENT COUNTERPART SIGNATURE PAGE FOR CORPORATE/PARTNERSHIP/LIMITED LIABILITY COMPANY/TRUST INVESTORS OR OTHER INSTITUTIONAL INVESTORS

The undersigned hereby subscribes for the principal amounts of Promissory Notes set forth below, and agrees to be bound by the terms of the Subscription Agreement and the Purchaser Questionnaire of which this Agreement is a part.

PLEASE NOTE THAT ONE OR MORE BRACKETS ON PAGES 3 AND 4 MUST BE INITIALED IN ORDER FOR THIS SUBSCRIPTION TO BE CONSIDERED. THE SUBSCRIBER MUST INITIAL ONE OR MORE OF (c), (d), (e) or (g) TO QUALIFY AS AN ACCREDITED INVESTOR.

EXECUTED this _____ day of _____ 2008, at _____, _____.

Principal amount of Promissory Note: $_____.

Entity Name: (please print or type)

_____

By: _____

Its: _____

---

### ACCEPTANCE

Accepted this _____ day of _____, 2008 at Chicago, Illinois.

AMB NEW GENERATION DATA
EMPOWERMENT, LLC,
an Illinois limited liability company

By: _____
Title: _____

14

## AMB NEW GENERATION DATA EMPOWERMENT, LLC
### SUBSCRIPTION AGREEMENT COUNTERPART SIGNATURE PAGE FOR
### IRA INVESTORS

The undersigned hereby subscribes for the principal amount of Promissory Notes set forth below, and agrees to be bound by the terms of the Subscription Agreement and the Purchaser Questionnaire of which this Agreement is a part.

PLEASE NOTE THAT ONE OR MORE BRACKETS ON PAGES 3 AND 4 MUST BE INITIALED IN ORDER FOR THIS SUBSCRIPTION TO BE CONSIDERED. EACH IRA INVESTOR MUST INITIAL (a), (b) or (f) TO QUALIFY AS AN ACCREDITED INVESTOR.

EXECUTED this _____ day of _____ 2008, at _____ _____, _____.

Principal amount of Promissory Note: $_____ _____.

IRA Account Name: (please print or type)

_____

Signature of IRA
Beneficiary: _____

Signature of IRA
Custodian: _____
Title: _____

### ACCEPTANCE

Accepted this _____ day of _____, 2008 at Chicago, Illinois.

AMB NEW GENERATION DATA
EMPOWERMENT, LLC,
an Illinois limited liability company

By: _____
Title: _____

15

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTERESTS ARE TO BE HELD IN CORPORATE NAME]

## CORPORATE CERTIFICATE

CERTIFICATE OF  _____

(Name of Corporation)

The undersigned, being the (Assistant) Secretary and keeper of the minutes of _____ a _____ (state) corporation (the "Corporation"), hereby certifies that the following is a true and complete copy of resolutions duly adopted by the Board of Directors of the Corporation which are in full force and effect and have not been superseded or amended.

WHEREAS, the Corporation has decided that it is in its best interest to make an investment in the Promissory Notes issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** (the "Company").

NOW, THEREFORE, BE IT:

RESOLVED, that the Corporation hereby is authorized and directed to make an investment in Promissory Notes and Membership Interests issued by the Company of the type and to the extent set forth in that certain Subscription Agreement (the "Subscription Agreement") of the Company.

FURTHER RESOLVED, that the President or any Vice President of the Corporation, acting alone, is hereby authorized and directed on behalf of the Corporation to execute and to deliver the Subscription Agreement and Purchaser Questionnaire and all other necessary and appropriate documents, including evidences of indebtedness and the pledging of security therefor, as may be required under the terms and conditions of the Subscription Agreement, the governing documents of the Company or otherwise, including any amendments to any of the foregoing and to take such other necessary and appropriate action, in his or her sole discretion and without further resolution of this Board of Directors to consummate the purchase of the Promissory Notes and Membership Interests issued by the Company and to effectuate the terms and intent of these resolutions.

IN WITNESS WHEREOF, I have executed this certificate as the (Assistant) Secretary of the Corporation this ____ day of _____, 2008, and declare that it is truthful and correct.

By:  _____

(Assistant) Secretary

16

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTEREST ARE TO BE HELD IN GENERAL PARTNERSHIP NAME]

## GENERAL PARTNERSHIP CERTIFICATE

CERTIFICATE OF _____ (the "Partnership")

(Name of Partnership)

The undersigned, constituting all requisite signatories of the Partnership, a(n) _____ (state) general partnership, hereby certify as follows:

1.    That the Partnership commenced business on _____, ____ and was established pursuant to a partnership agreement dated _____. _____ (the "Agreement").

2.    That a true and correct copy of the Agreement is attached hereto and that, as of the date hereof, the Agreement has not been amended (except as to any attached amendments) or revoked and is still in full force and effect.

3.    That the requisite partners of the Partnership have determined that an investment in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription Agreement is of benefit to the Partnership and has determined to make such investment on behalf of the Partnership and has full power and authority to do so and thereby bind the Partnership.

IN WITNESS WHEREOF, we have executed this certificate as the requisite partners of the Partnership this ___ day of _____, 2008, and declare that it is truthful and correct.

By: _____

Partner

By: _____

Partner

By: _____

Partner

17

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTEREST ARE TO BE HELD IN LIMITED PARTNERSHIP NAME]

## LIMITED PARTNERSHIP CERTIFICATE

CERTIFICATE OF _____ (the "Partnership")

(Name of Partnership)

The undersigned, constituting all requisite signatories of the Partnership, a(n) _____ (state) limited partnership, hereby certify as follows:

1.    That the Partnership commenced business on _____, ____ and was established pursuant to a partnership agreement dated _____, _____ (the "Agreement").

2.    That a true and correct copy of the Agreement is attached hereto and that, as of the date hereof, the Agreement has not been amended (except as to any attached amendments) or revoked and is still in full force and effect.

3.    That the requisite partners of the Partnership have determined that an investment in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription Agreement is of benefit to the Partnership and has determined to make such investment on behalf of the Partnership and has full power and authority to do so and thereby bind the Partnership.

IN WITNESS WHEREOF, we have executed this certificate as the requisite partners of the Partnership this ____ day of _____, 2008, and declare that it is truthful and correct.

_____

Limited Partnership

By: _____

Its:  General Partner

18

[TO BE COMPLETED ONLY IF THE PROMISSORY NOTE AND MEMBERSHIP INTERESTS ARE TO BE HELD IN CORPORATE NAME]

## LIMITED LIABILITY COMPANY CERTIFICATE

CERTIFICATE OF _____

(Name of Limited Liability Company)

The undersigned, constituting all requisite signatories of _____ a(n) _____ (state) limited liability company (the "Company"), hereby certifies as follows:

1. That the Company commenced business on _____ ____ and was established pursuant to an operating agreement dated _____ _____ (the "Agreement").

2. That a true and correct copy of the Agreement is attached hereto and that, as of the date hereof, the Agreement has not been amended (except as to any attached amendments) or revoked and is still in full force and effect.

3. That the requisite partners of the Company have determined that an investment in Promissory Notes and Membership Interests issued by **AMB NEW GENERATION DATA EMPOWERMENT, LLC** to the extent and of the type set forth in that certain Subscription Agreement is of benefit to the Company and has determined to make such investment on behalf of the Company and has full power and authority to do so and thereby bind the Company.

IN WITNESS WHEREOF, we have executed this certificate as the requisite members of the Company this ____ day of _____, 2008, and declare that it is truthful and correct.

By: _____
Member

By: _____
Member

By: _____
Member

19